Ahmed **MOHAMED**, Plaintiff,

v.

**MARRIOTT INTERNATIONAL, INC. and Marriott Corp.,** Defendants.

No. 94 Civ. 2336 (RWS).

United States District Court, S.D. New York.

Oct. 30, 1996.

---

Farber & Rich, L.L.P., New York City (Alan J. Rich, of counsel), for Plaintiff.

Berke–Weiss & Pechman, L.L.P., New York City (Laurie Berke–Weiss, of counsel), Julienne W. Bramesco, Marriott International, Inc., Bethesda, MD, Marc Abrams, Portland, OR, for Defendants.

SWEET, District Judge.

Defendants Marriott International, Inc., and Marriott Corporation (collectively, "Marriott") have moved for summary judgment, pursuant to Fed.R.Civ.P. 56, to dismiss the complaint of Plaintiff Ahmed Mohamed ("Mohamed") under the Americans With Disabilities Act, 42 U.S.C. § 12101 *et seq.* (Supp. V 1993), ("ADA") and the New York State Human Rights Law, N.Y. Executive Law § 290 *et seq.* (McKinney 1993) on the grounds that Mohamed should be judicially estopped from asserting an ADA claim because of his application to the Social Security Administration ("SSA") for Social Security Disability Insurance Benefits ("SSDI") under the Social Security Act, 42 U.S.C. §§ 423 et seq. (1994).

For the reasons set forth below, the motion is denied and the action will proceed to trial on November 17, 1996 or as soon thereafter as possible.

### Prior Proceedings

On April 1, 1994, Mohamed filed the original complaint in this action, alleging that his discharge by Marriott violated, *inter alia,* the ADA and state human rights statutes.

Motions directed to the pleadings and for summary judgment were determined by the prior opinions of the Court, familiarity with which is assumed. *See Mohamed v. Marriott International, Inc.,* 905 F.Supp. 141 (S.D.N.Y.1995); *Mohamed v. Marriott International, Inc.,* No. 94 Civ. 2336, 1996 WL 103838 (S.D.N.Y. March 8, 1996). In denying Marriott's prior motion for summary judgment, this Court determined that there were genuine issues of material fact on the question of whether Mohamed was "a qualified individual with a disability." 905 F.Supp. at 150–51.

Since the resolution of the prior substantive motions, discovery has proceeded, and a trial date was set.

On July 12, 1996, Marriott filed the instant motion. Oral argument was heard on October 9, 1996, and submissions were received

by the Court until October 21, 1996, at which time the matter was deemed fully submitted.

### The Parties

Mohamed was born in Egypt, came to the United States in 1985, and is now a resident of New York City. He is profoundly deaf and lacks the power of intelligible speech. Mohamed's primary mode of communication is American Sign Language (ASL). He can read English at a level sufficient to comprehend magazines and employment advertisements in newspapers. He can write using English vocabulary and ASL grammar and syntax in a manner somewhat intelligible to English readers, particularly those accustomed to reading Mohamed's written English.

Defendant Marriott International, Inc., is a Delaware corporation licensed to do business in the State of New York. Defendant Marriott Corporation was a Delaware corporation licensed to do business in New York through October 7, 1994. Marriott International operates the Marriott Marquis (the "Hotel"), a hotel at 1535 Broadway in New York City formerly managed by Marriott Corporation.

### Facts

In deciding a motion for summary judgment, "[a]s a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196 (2d Cir.1995); *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29 (2d Cir.1994); *Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir.1988) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n. 2, 106 S.Ct. 2548, 2556 n. 2, 91 L.Ed.2d 265 (1986) (Brennan, J., dissenting). The facts as presented here are construed accordingly, and they are limited to this motion.

A complete recitation of the facts may be found in the Court's opinion of October 24, 1995. *Mohamed v. Marriott International, Inc.*, 905 F.Supp. at 146–48. A brief synopsis of facts relevant to this motion is set forth below.

Mohamed began working for Marriott on April 6, 1988. After working as a steward and subsequently in the housekeeping department, Mohamed transferred to the engineering department. On October 1, 1993, Marriott accused Mohamed of taking property of a Hotel customer, in violation of company policies relating to property found on Hotel premises. Mohammed was initially interrogated with the assistance of a Marriott employee who understood some ASL. Later that day, he was granted a hearing with a qualified ASL interpreter and discharged by Marriott. The conduct of the pre-termination proceedings gave rise to Mohamed's ADA claim of failure to provide reasonable accommodations.

On July 22, 1994, Mohamed applied for SSDI benefits. He signed a computer generated form that included the statement: "I became unable to work because of my disabling condition on October 01, 1993." In his application, Mohamed stated that his disability was "Total Deafness." In response to an item on the SSDI application requesting an explanation of how his condition prevented him from working, Mohamed stated:

> I have tried to get another job with the help of OVR [Office of Vocation Rehabilitation], but I have been frustrated any place I look. They ask for a resume and say they will contact me. There is not enough jobs open now.

Mohamed was given SSDI benefits on the basis of his established deafness. Profound deafness, such as that suffered by Mohamed, is a "listed" disability. When an SSDI applicant establishes that he is currently not employed and has a "listed" disability, SSA makes no further inquiry into the applicant's employability. 20 C.F.R. § 404.1520(c) & 20 C.F.R. Pt. 404, Subpt. P, App. I (1996). Marriott was first advised of Mohamed's application for benefits when it deposed Mohamed on March 9, 1995. Marriott received Mohamed's file from SSA on May 28, 1996.

In the October 24, 1995 Opinion ruling on Marriott's first motion for summary judgment, the Court held that a question of fact remained as to whether Mohamed was a "qualified individual with a disability" within the meaning of the ADA. The issue then

before the Court related to whether the alleged theft rendered an individual "unqualified" as a matter of law, and this Court ruled that it did not.

### Discussion

The Rule 56 motion for summary judgment is "an integral part" of the Federal Rules of Civil Procedure and facilitates the overall purpose of the Rules "to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555. A motion for summary judgment may be granted only when there is no genuine issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law. *See* Rule 56(c), Fed.R.Civ.P.; *Silver v. City Univ. of New York,* 947 F.2d 1021, 1022 (2d Cir.1991). If, when "[v]iewing the evidence produced in the light most favorable to the nonmovant ... a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate." *Binder v. Long Island Lighting Co.,* 933 F.2d 187, 191 (2d Cir.1991). However, "all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady v. Town of Colchester,* 863 F.2d 205, 210 (2d Cir.1988) (*citing Celotex Corp. v. Catrett,* 477 U.S. 317, 330 n. 2, 106 S.Ct. 2548, 2556 n. 2, 91 L.Ed.2d 265 (1986) (Brennan, J., dissenting); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970)); *see United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Cartier v. Lussier,* 955 F.2d 841, 845 (2d Cir.1992); *Burtnieks v. City of New York,* 716 F.2d 982, 983–84 (2d Cir.1983).

To make out a *prima facie* case of employment discrimination on the basis of disability, a plaintiff must be able to prove, *inter alia,* that he is a "qualified individual with a disability." 42 U.S.C. § 12112(a) (1994). The ADA defines a "qualified individual with a disability" to be "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8) (1994); 29 C.F.R. § 1630.2(m) (1996).

Mohamed urges that a question of fact remains for trial as to whether he is a "qualified individual," despite the representations of disability he made in his application for SSDI benefits. The issue to be determined on this motion is whether a disability determination for SSDI purposes bars a recovery under the ADA for persons who would otherwise be qualified to advance a claim of disability discrimination in employment. Specifically at issue is the applicability, under the circumstances presented here, of the doctrine of judicial estoppel to preclude, as a matter of law, a plaintiff from proving that he is, in fact, a "qualified" individual with a disability for purposes of stating an ADA claim.

### Judicial Estoppel

"The doctrine of judicial estoppel prevents a party from asserting a factual position in a legal proceeding that is contrary to a position previously taken by him in a prior legal proceeding." *Bates v. Long Island R.R.,* 997 F.2d 1028, 1037 (2d Cir.), *cert. denied,* 510 U.S. 992, 114 S.Ct. 550, 126 L.Ed.2d 452 (1993). Judicial estoppel serves two objectives: (1) preserving the sanctity of the oath by requiring consistency in sworn positions; and (2) protecting judicial integrity by avoiding inconsistent results in two proceedings. *Id.* at 1038.

While *Bates* and subsequent cases make clear that judicial estoppel is recognized in the Second Circuit, *see, e.g., AXA Marine & Aviation Ins., Ltd. v. Seajet Industries, Inc.,* 84 F.3d 622, 628 (2d Cir.1996), the doctrine has been criticized, and even rejected in some circuits. *See, e.g., Chrysler Credit Corp. v. Country Chrysler, Inc.,* 928 F.2d 1509, 1520 n. 10 (10th Cir.1991) (judicial estoppel not recognized); *Konstantinidis v. Chen,* 626 F.2d 933, 938 (C.A.D.C.1980) (same).

Moreover, those courts that do apply judicial estoppel do so only with caution. *See, e.g., Mishkin v. Peat, Marwick, Mitchell & Co.,* No. 86 Civ. 4301, 1988 WL 391648, *1 (S.D.N.Y. Nov. 7, 1988) (applying doctrine, but finding no estoppel because no judgment was entered based on prior position); *A.F.L. Falck, S.p.A. v. E.A. Karay Co.,* 131 F.R.D. 46, 48 (S.D.N.Y.1990) (exercising caution in

declining to apply judicial estoppel); *Dockery v. North Shore Medical Ctr.,* 909 F.Supp. 1550, 1557–59 (S.D.Fla.1995) (rejecting application of judicial estoppel based on statements in administrative filings). Circumspection in the use of judicial estoppel is warranted because of a concern for offending the liberal spirit of the federal pleading rules. As the court in *Bates* noted, judicial estoppel is in tension with the alternative pleading provisions of Fed.R.Civ.P. 8(e)(2), which permits parties to take inconsistent positions in their pleadings. 997 F.2d at 1038, n. 3. Moreover, there may be legitimate reasons for a plaintiff to take apparently inconsistent positions in different proceedings. *See Mishkin,* 1988 WL 391648, at *1 (" 'As with other principles of fairness, care must be taken that this approach not lead to undue moralizing that may overlook reasonable grounds for changing positions on the basis of new information.' ") (*quoting* 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4477 at 783 (1981)).

█ Two conditions must be satisfied before a court will apply judicial estoppel: (1) the party against whom estoppel is asserted must have argued an inconsistent position in a prior proceeding; and (2) the prior position must have been adopted by the court in the prior proceeding. *Bates,* 997 F.2d at 1038.[1]

### *Judicial Estoppel Will Not Bar Mohamed's ADA Claim*

█ The instant motion raises the question of whether a plaintiff's claim for and/or award of SSDI benefits estops him from claiming to be qualified for work, and thus entitled to protection under the ADA. This issue has not been resolved by the Second Circuit. However, a number of the courts that have considered the question have invoked the doctrine of judicial estoppel in

rejecting the ADA claims of an employee who has made representations of total disability to receive SSDI or other disability benefits. *See, e.g., McNemar v. Disney Store, Inc.,* 91 F.3d 610, 616–19 (3d Cir.1996) (approving district court's application of judicial estoppel to bar ADA claim of HIV positive individual who had made representations and submitted physicians' certifications of total and permanent disability in applications for state disability benefits, SSDI benefits, and deferment of student loan repayment); *Kennedy v. Applause, Inc.,* 90 F.3d 1477, 1480–82 (9th Cir.1996) (granting summary judgment for defendant on basis of plaintiff's prior representations of disability).

While the Second Circuit has not yet addressed the applicability of judicial estoppel to ADA claims, two Courts in this district have spoken to the issue.

In *Marvello v. Chemical Bank,* 923 F.Supp. 487 (S.D.N.Y.1996), defendant moved for summary judgment on the grounds that plaintiff was judicially estopped from asserting an ADA claim because of his receipt of SSDI benefits. The Honorable Kimba Wood, adopting the report of Magistrate Judge Andrew J. Peck, denied defendant's motion because limited discovery was required to determine what representations plaintiff made to the SSA in his application. While not reaching the merits of the motion for summary judgment, Judge Peck made the following observations:

> The Court also notes that plaintiff Marvello has submitted a pamphlet issued by the Social Security Administration, dated January 1996, which addresses the possibility of receiving disability benefits, at least for a limited time period, while working. (See Pamphlet entitled "Social Security: Working While Disabled: How We Can Help," attached to Marvello 3/14/96 letter.) The "booklet provides information to help you treat your disability as a

---

1. While judicial estoppel is a distinct doctrine, it bears some resemblance to issue preclusion (previously known as collateral estoppel). The requirements for application of issue preclusion are: (1) the same issue must be involved in both litigations; (2) the issue must have been actually litigated and necessarily decided; (3) there must have been a full and fair opportunity to litigate the issue in the prior action; (4) the prior disposition must have been final and on the merits. *See,* 18 Wright, Miller & Cooper, *Fed.Prac. & Proc.,* § 4416, at 137–38); *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979). Although these elements need not be established to invoke judicial estoppel, they may, given the similar purpose and effect of the two doctrines, provide guidance in applying judicial estoppel in a given context.

'bridge,' not the end of the road." Id. at 2. "Helping people with disabilities to lead independent and fuller lives is a national policy affecting both the government and the private sector." Id. This pamphlet is consistent with, and appears to be based upon 42 U.S.C. § 422(c)(3) which allows SSI recipients to engage in a "period of trial work." The trial work period allows a recipient to work for up to nine months while receiving SSI benefits, subject to some limitations. This provision, which is clearly intended to encourage SSI recipients to seek work even while receiving SSI support, was not addressed in any of the decisions [granting summary judgment on judicial estoppel grounds] cited above.

923 F.Supp. at 491–92.

In *Bonnano v. Gannett Co.*, 934 F.Supp. 113, 115 (S.D.N.Y.1996), the Court (Hon. Jed S. Rakoff) held that the plaintiff could not make out a *prima facie* case of an ADA violation, resting its decision on two alternative grounds. One ground was that plaintiff's claim to be a "qualified individual" under the ADA was "totally at variance with the unequivocal formal representations he made to [defendant] and others (including New York State) in connection with his applications and appeals for long term disability benefits. In those applications and proceedings, he represented that he was so completely and permanently disabled that he would be unable ever to return to work." *Id.* at 114.

Although many cases appear to have applied judicial estoppel in circumstances similar to those in this case, a significant number of courts have come to a different conclusion. *See, e.g., D'Aprile v. Fleet Services Corp.*, 92 F.3d 1, 4–5 (1st Cir.1996) (claim for disability benefits does not preclude action under state disability discrimination law); *Overton v. Reilly*, 977 F.2d 1190, 1196 (7th Cir.1992) (although SSA determination that plaintiff was entitled to disability benefits might be evidence of severity of handicap, it could not be construed as judgment that he was not qualified for position under the Rehabilitation Act); *Dockery v. North Shore Medical Center*, 909 F.Supp. 1550, 1557–59 (S.D.Fla. 1995) (rejecting application of judicial estop-

pel to ADA claim); *Smith v. Dovenmuehle Mortgage, Inc.*, 859 F.Supp. 1138, 1141–43 (N.D.Ill.1994) (plaintiff's prior representation of disability to SSA did not judicially estop him from raising subsequent ADA claim); *Kupferschmidt v. Runyon*, 827 F.Supp. 570, 574 (E.D.Wis.1993) (finding of disability by the SSA should not be given preclusive effect in a Rehabilitation Act case).

In addition, a number of the cases purporting to apply "judicial estoppel" appear merely to consider prior representations made in SSDI or other proceedings as one piece of persuasive evidence that the plaintiff is not "qualified," rather than as an absolute legal bar to a subsequent ADA claim. In the absence of strong countervailing evidence that the employee or applicant is, in fact, qualified, these courts appear to have determined that the prior representations carry sufficient weight to grant summary judgment against the plaintiff. *See, e.g., McNemar*, 91 F.3d at 619, n. 8 (distinguishing *Overton* on the grounds that significant evidence existed that Overton, unlike McNemar, was able to perform his duties).

In this case, as in *Overton*, there is ample evidence that Mohamed was able to perform the "essential functions" of his job with Marriott. As noted in this Court's prior opinion, Mohamed received consistently positive evaluations and had no record of disciplinary actions prior to his termination. *Mohamed*, 905 F.Supp. at 150. There is no evidence (other than Mohamed's application for SSDI) that his ability to perform the essential functions of the job have diminished since his termination.

Moreover, it would be inappropriate to invoke the fact-sensitive and limited doctrine of judicial estoppel to erect a *per se* bar to ADA protection for individuals who have also applied for and/or received SSDI benefits. *See, generally*, Anne E. Beaumont, Note, *This Estoppel Has Got to Stop: Judicial Estoppel & the Americans with Disabilities Act*, (unpublished manuscript, forthcoming N.Y.U. L.Rev., 1996). Such uncritical application of judicial estoppel fails to recognize significant differences in: (1) the applicable legal standards of the ADA and the Social Security Act; (2) the types of fora and procedures

involved in ADA cases and SSDI administrative determinations; and (3) the policy goals animating the two statutes' definitions of disability.

The Social Security Act defines "disability" as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the statute, a person is entitled to disability benefits only if his impairments are:

> of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of gainful work which exists in the national economy.... "[W]ork which exists in the national economy" means work which exists in significant numbers, either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

However, the statute clearly permits individuals to receive benefits while engaged in a period of paid "trial work." 42 U.S.C. § 422(c).

On the surface, the Social Security Act's definition of disability appears to exclude members of the ADA's protected class of "qualified individuals" from eligibility for SSDI benefits. However, the ADA's requirement that an employer make "reasonable accommodations", requires that an employer consider modifying existing job descriptions to create a job suitable for a particular disabled applicant or employee. See 42 U.S.C. § 12111(9). Since such specially-tailored jobs may not currently "exist[ ] in substantial numbers" in the labor market, a person with a disability who could perform the "essential functions" of such a job would nonetheless be unable to engage in gainful work and thus be "disabled" within the meaning of the Social Security Act.

■ Thus, an individual may be "disabled" for purposes of receiving SSDI benefits, because few jobs which he might perform are currently structured to accommodate his disability, but still be within the ADA's protected class, because a particular job in which he has an interest could be modified to accommodate his disability. D'Aprile, 92 F.3d at 4–5 (claim of "total disability" for disability benefits does not constitute admission of inability to work for purposes of disability discrimination claim). Moreover, the Social Security Act itself permits individuals to receive benefits and work at the same time, demonstrating that the classes of individuals entitled to protection under the two statutes are not mutually exclusive.

In light of these differing legal standards, Mohamed's assertion of inability to work for SSDI purposes is not necessarily inconsistent with his claim here to be capable of performing the essential functions of the job from which he was discharged.

■ The nature of the forum and procedures used in making SSDI determinations also counsel against application of judicial estoppel in this case. The doctrine developed in cases where parties made inconsistent representations to two different courts, not to an administrative agency and a court. Although estoppel is sometimes applied to give preclusive effect to administrative agency decisions, the case for application of the doctrine is clearly strongest when the forum and its procedures permit a judgment on the merits after the orderly presentation of evidence in adversarial litigation. Compare Cheatwood v. Roanoke Indus., 891 F.Supp. 1528, 1534–38 (N.D.Ala.1995) (applying estoppel where prior workers compensation determination involved hearing with live sworn testimony by plaintiff) with Swineford v. Snyder County, 15 F.3d 1258, 1268–69 (3d Cir.1994) (declining to give preclusive effect to unemployment compensation board finding in subsequent civil rights litigation, because, inter alia, of board's informal mechanisms of eligibility determination) and Dockery, 909 F.Supp. at 1557 (declining to apply collateral estoppel where prior administrative procedure involved only filling out of application).

Here, the determination that Mohamed was eligible for SSDI benefits was made pursuant to a paper application, without a

formal hearing. Mohamed was required to complete an application and provide a medical certification that he was totally deaf. Because deafness is a "listed disability," SSA did not inquire further into Mohamed's capacity to work. 20 CFR § 404.1520(c) and 20 CFR Part 404, Subpart P, App. I (1996). Mohamed did not make any specific representations about his ability to perform the essential functions of the job from which he was terminated. Indeed, he represented to the SSA that he continued to seek work. The streamlined procedures giving rise to the SSA's determination of disability should, at a minimum, give pause to a court considering barring the courtroom door to a plaintiff alleging employment discrimination.

Finally, the different policy goals animating the ADA and the SSDI provisions of the Social Security Act counsel against perfunctory application of judicial estoppel to bar SSDI claimants from maintaining ADA actions. As intimated in *Marvello,* applying estoppel in the circumstances here could undermine the policy goals of the ADA without advancing the separate goals of the Social Security Act. 923 F.Supp. at 491–92. A major purpose of the ADA is to eradicate "the continuing existence of unfair and unnecessary discrimination and prejudice[, which] denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity." *See* 42 U.S.C. § 12101(a)(9). SSDI benefits, on the other hand, are intended to protect the disabled from indigency. The ADA's overriding purpose of encouraging the disabled to seek employment would be thwarted by application of judicial estoppel under the circumstances of this case. *See Smith,* 859 F.Supp. at 1142 (the application of judicial estoppel "would place plaintiff in the untenable position of choosing between his right to seek disability benefits and his right to seek redress for an alleged violation of the ADA ... [and] conflict with one of the stated purposes of the ADA ..."). Moreover, it is clear that the Social Security Act shares the goal of encouraging the disabled to engage in re-

munerative employment, because it permits an individual to receive benefits while working. *See* 42 U.S.C. § 422(c).

In sum, the application of judicial estoppel is inappropriate in this case. First, it cannot be said that Mohamed clearly argued "inconsistent" positions in the two proceedings. Mohamed affirmatively represented only that he "became unable to work due to his disability," not that he was unable to perform, with or without accommodation, the essential functions of the job from which he was terminated. He also made clear to SSA that he was actively seeking employment. He has not made the sort of unequivocal and manifestly inconsistent representations that call into question the "sanctity of the oath" or the "integrity of the judicial process." *Bates,* 997 F.2d at 1038. Unlike the typical case in which judicial estoppel is invoked, this is not a case in which the plaintiff is attempting to "play fast and loose with the courts." *See Scarano v. Central R.R.,* 203 F.2d 510, 513 (3d Cir.1953); 18 Wright, Miller & Cooper, *Federal Practice and Procedure* § 4477, at 781–82 (1981). Moreover, the SSA's determination, while amounting to an adoption of Mohamed's claim of disability, was hardly the result of a formal adjudication on the merits that he is not a "qualified individual with a disability" within the meaning of the ADA. Finally, estopping Mohamed under the circumstances of this case would undermine the legislative policy of providing the disabled with both protection against destitution and a genuine opportunity to participate fully in the job market.

### Conclusion

For the reasons discussed above, Marriott's motion for summary judgment is denied.

It is so ordered.