Kimberly Dawn WHEELER Plaintiff

v.

BALDOR ELECTRIC COMPANY
Defendant

No. 04–2039.

United States District Court,
W.D. Arkansas,
Ft. Smith Division.

Aug. 31, 2005.

James R. Filyaw, Fort Smith, AR, for Plaintiff.

Kimberly A. Yates, Tim Sarsfield, Timm W. Showalter, for Defendant.

## MEMORANDUM OPINION AND ORDER

DAWSON, District Judge.

This case involves the termination of Plaintiff by Defendant in October 2003. Plaintiff alleges she was a disabled employee and that Defendant's conduct in terminating her constituted a violation of the Americans with Disabilities Act of 1990 [hereinafter "ADA"], 42 U.S.C. § 12101 *et*

*seq.* Defendant contends Plaintiff's Complaint is without merit as Plaintiff was not a "qualified" individual under the ADA. Currently before the Court is Defendant's Motion for Summary Judgment. (Doc. 14.) For the reasons that follow, we determine Defendant's motion is GRANTED, and Plaintiff's Complaint (Doc. 1) is DISMISSED WITH PREJUDICE.

## A. Background

In February 1995, Plaintiff began work as a third shift drill press operator on Defendant's end plate department drill team. (Doc. 16 ¶¶ 2, 9 and 10.) This job required Plaintiff to stand, walk, push and pull metal carts, lift iron plates weighing up to 40 pounds to waist-high and reach above her head to pull down the drill. (Doc. 16 ¶¶ 17,18,21, and 23.) From time to time, Plaintiff also served as a "sidetrack/repair" worker, requiring her to circulate throughout the end plate department to "resolve issues concerning problem parts that are 'sidetracked' or designated for 'repair.'" (Doc. 16 ¶¶ 27–31.)

In April 2003, Plaintiff was diagnosed with interstitial cystitis.[1] According to Plaintiff, this condition is a disabling, but controllable, condition that causes cramping, vomiting, and bleeding. (Doc. 1; Compl. ¶ 7.) On April 28, 2003, Plaintiff submitted a doctor's note excusing her from work from April 28 to May 19, 2003. (Doc. 16 ¶ 46.) At the end of this period, and at Plaintiff's request, Plaintiff's doctor released Plaintiff for full duty work beginning May 24, 2003. (Doc. 16 ¶ 50.) Plaintiff returned to work full-time on May 24, 2003, and worked through June 9, 2003. During this time, she was assigned to an array of jobs in the end plate department including the drill press. (Doc. 16 ¶¶ 47–67.) Plaintiff received a series of short-term doctor's notes excusing her from work after June 9, 2003, and she never returned to work.

Plaintiff applied for long term disability insurance benefits in July 2003. On July 17, 2003, Dr. Darryl Francis noted Plaintiff was "unable to work any kind of physical activities at this time." (Doc. 16 Ex. E; Wheeler Dep. Ex. 5.) These restrictions were never lifted. Plaintiff's application for long term disability insurance benefits was eventually approved on June 24, 2004. (Doc. 16 ¶ 38.)

In August 2003, Plaintiff applied for Social Security Disability Insurance benefits. (Doc. 16 ¶ 39.) In her application dated August 18, 2003, Plaintiff indicated she became unable to work due to her disabling condition on February 20, 2003, and she continued to be disabled. (Doc. 16 Ex. G.) Plaintiff made representations in her August 24, 2003, "Social Security Disability Supplemental Interview Outline" and "Disability Report," describing the severity of her physical limitations. Based on these representations, Vocational Analyst Earlene McDonald concluded on October 30, 2003, that Plaintiff could not "return to past relevant work because of physical and environmental restrictions." (Doc. 16 Ex. G.) McDonald also stated Plaintiff could not perform jobs requiring sedentary exertion, and she was precluded from "fulfilling the functional demands of any occupation found within the competitive national economy." McDonald concluded Plaintiff's vocational outlook was doubtful. (Doc. 16 Ex. G.) Plaintiff's application for Social Security benefits was approved on Novem-

---

1. Interstitial Cystitis is a "chronic inflammatory condition of unknown etiology involving the epithelium and muscularis of the bladder, resulting in reduced bladder capacity, pain relived by voiding, and severe bladder irritative symptoms." *PDR Medical Dictionary* 450 (2d ed.2000).

ber 25, 2003, and effective retroactively to March 23, 2003. (Doc. 16 ¶ 39 and Ex. G.)

The final medical release submitted by Plaintiff excused her from work for the period from September 9 through October 1, 2003. (Doc. 16 ¶ 79). Baldor's call-in policy for work absences requires employees to call their supervisors and report if they are unable to report for work. (Doc. 16 ¶ 80–89.) Employees failing to report for two consecutive days and not calling to report their absence are subject to termination. (Doc. 16 ¶ 82.) Plaintiff contends she followed the call-in procedures regarding work absences every day from October 1 through October 7, 2003. Defendant alleges Plaintiff did not initiate contact with Defendant until October 6, 2003, when Plaintiff's roommate, Beth Aldridge, telephoned to explain Plaintiff would not report for work. (Doc. 16 ¶¶ 104 and 107.)

Plaintiff filed her Complaint (Doc. 1) on February 10, 2004, alleging Defendant violated the ADA by terminating her on the basis of her April 2003 diagnosis of interstitial cystitis.

**B. Discussion**

■ The ADA prohibits an employer from discriminating "against a qualified individual with a disability because of the disability." 42 U.S.C. § 12112(a) (2005). Only a "qualified individual with a disability" may state a claim for discrimination. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir.1995); *Tyndall v. Nat'l Educ. Ctrs., Inc.*, 31 F.3d 209, 212 (4th Cir.1994); *Jackson v. Veterans Admin.*, 22 F.3d 277, 278 (11th Cir.1994), *cert. dismissed*, 513 U.S. 1052, 115 S.Ct. 657, 130 L.Ed.2d 560 (1994). The ADA defines "qualified individual with a disability" as an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."

42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(m).

■ In order to prove a *prima facie* case of disability discrimination under the ADA, a plaintiff must show "(1) that she is disabled within the meaning of the ADA, (2) that she is qualified, either with or without reasonable accommodation, to perform the essential functions of the job at issue, and (3) that she suffered an adverse employment decision because of her disability." *Treanor v. MCI Telecomm. Corp.*, 200 F.3d 570, 575 (8th Cir.2000). Once the plaintiff establishes her *prima facie* case, "the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for its actions." *Wilking v. County of Ramsey*, 153 F.3d 869, 872–73 (8th Cir.1998) (quoting *Christopher v. Adam's Mark Hotels*, 137 F.3d 1069, 1072 (8th Cir.1998)). If the employer meets this burden, the burden shifts back to the plaintiff to demonstrate that the employer's stated reason is a pretext for discrimination. *Christopher*, 137 F.3d at 1072. At all times, the plaintiff bears the ultimate burden of demonstrating that discrimination was the real reason for the employer's actions. *Snow v. Ridgeview Med. Ctr.*, 128 F.3d 1201, 1206 (8th Cir. 1997).

In determining whether summary judgment is appropriate, the Court must view the facts and inferences in the light most favorable to the non-moving party. *Rabushka v. Crane Co.*, 122 F.3d 559, 562 (8th Cir.1997). The moving party bears the burden of establishing the absence of issues of material fact in the record and of establishing that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In a case alleging violations of the ADA, "[s]ummary judgment is proper if a plaintiff fails to establish any element of her

*prima facie* case." *Wilking,* 153 F.3d at 872.

In our case, Plaintiff was diagnosed with interstitial cystitis in July 2003. Plaintiff's doctor restricted Plaintiff's activities by stating she should not "bend, lift, push or pull," and that she "is unable to work any kind of physical activities at this time." (Doc. 16 ¶ 42.) These medical restrictions were never lifted, and we assume without deciding that Plaintiff's condition qualifies as a "disability" under the ADA, and that Plaintiff has satisfied the first element of her *prima facie* case.

Defendant contends Plaintiff cannot meet the second element of her *prima facie* case as she is not qualified to perform her job at Baldor. A "qualified" individual under the ADA is one who has "the requisite skill, experience, education and other job-related requirements of the employment position that such individual *holds or desires.*" *Treanor,* 200 F.3d at 575 (quoting *Weber v. Strippit, Inc.,* 186 F.3d 907, 916 (8th Cir.1999)). Defendant argues Plaintiff was not a qualified employee as she indicated in her August 2003 application for Social Security disability insurance benefits that she was unable to work. After the Social Security Administration determined Plaintiff was "totally disabled," she never received a medical release to return to work.

"[S]ummary judgment should issue unless there is 'strong countervailing evidence that the employee ... is, in fact, qualified.'" *Dush v. Appleton Elec. Co.,* 124 F.3d 957, 963 (8th Cir.1997) (quoting *Mohamed v. Marriott Intern., Inc.,* 944 F.Supp. 277, 282 (S.D.N.Y.1996)). Typically, "the prior representations [of total disability] carry sufficient weight to grant summary judgment against the plaintiff." *Dush,* 124 F.3d at 963 (citing *Mohamed,* 944 F.Supp. at 282); *see also Kennedy v. Applause, Inc.,* 90 F.3d 1477, 1481 (9th Cir.1996) (finding summary judgment proper where the ADA claimant, who had professed to be "totally disabled" for other purposes, resisted summary judgment with deposition testimony that was "uncorroborated and self-serving").

In the present case, the Social Security Administration determined Plaintiff was "totally disabled" based on representations made in her application for Social Security Disability Insurance benefits in August 2003. This determination was supported by the reports of Plaintiff's doctors who indicated Plaintiff was unable to resume working after June 9, 2003 and never released her to work after that date.[2] Plaintiff submits an affidavit executed on April 11, 2005, in which Plaintiff insisted she remained capable of working. (Doc. 20 Ex. 12.) Plaintiff's affidavit alone cannot support a conclusion that Plaintiff was able to perform the essential functions of an occupation as it contradicts the prior opinions and findings of her doctors and the Social Security Administration. Therefore, we find Plaintiff has failed to offer sufficient countervailing evidence that she is a "qualified individual" under the ADA.

We therefore conclude Plaintiff is not a "qualified individual" for the purposes of the ADA, and Plaintiff has failed to make a *prima facie* case of discrimination on the basis of a disability.

**C. Conclusion**

Based on the foregoing, the Court determines Defendant's Motion for Summary

---

**2.** The Court acknowledges that Plaintiff's doctor released Plaintiff for full duty work as of May 24, 2003, and that Plaintiff returned to work, working until June 9, 2003. (Doc. 16 ¶ 50). This work release is of no great mo-ment since we are concerned only whether Plaintiff was a "qualified" individual at the time of her termination in October 2003. *See Dush,* 124 F.3d at 963–64.

Judgment (Doc. 14) is GRANTED. Plaintiff's Complaint is DISMISSED WITH PREJUDICE, and all parties are to bear their own costs. In view of the Court's decision as to Defendant's summary judgment motion, Defendant's Motion to Strike Plaintiff's Affidavit (Doc. 23) is DENIED AS MOOT. The jury trial previously scheduled for November 28, 2005, is cancelled.