**Linda C. PAYNE, Plaintiff,**

**v.**

**STATE OF NEW YORK POWER AUTHORITY, Robert A. Hiney, Philip J. Pellegrino, and Christopher L. De Graffenried, Defendants.**

No. 95 Civ. 8686(MGC).

United States District Court, S.D. New York.

March 17, 1998.

Mandy R. Steele, East Brunswick, NJ, for Plaintiff.

Charles M. Pratt, New York City by Arthur T. Cambouris, Wendy M. Lane, Genine D. Edwards, for Defendants.

## OPINION

CEDARBAUM, District Judge.

Plaintiff Linda Payne is an employee of defendant New York State Power Authority. This action arises out of her 1994 demotion from the position of economist. Plaintiff sues Power Authority under 42 U.S.C. § 2000e, et seq. (hereafter "Title VII") for race and sex discrimination and retaliation. She also sues Power Authority and three of her supervisors under 42 U.S.C. § 1983 for violation of her right to equal protection of the laws. Finally, she sues Power Authority and the individual defendants for common law intentional infliction of emotional distress. Defendants move for summary judgment pursuant to Fed.R.Civ.P. 56.

At oral argument of defendants' motion, plaintiff withdrew her claims of sex discrimination and intentional infliction of emotional distress. (Tr. 2, 17.) For the reasons that follow, defendants' motion for summary judgment on the remaining claims is granted.

### Undisputed Facts

Defendant Power Authority is a subdivision of the State of New York. (Def. 56.1 Stat. ¶ 1.) Defendants Hiney, Pellegrino, and De Graffenried are managers employed by Power Authority. (Compl. ¶¶ 3–5.) Plaintiff is an African–American woman who has been employed by Power Authority since 1987. (Def. 56.1 Stat. ¶ 12.)

Hiney and Pellegrino approved the decision to hire plaintiff in January of 1987. Plaintiff was hired as a power analyst in the power sales and rates division of the market-

ing and development department in New York City. (Def. 56.1 Stat. ¶ 12; Payne Depo. at 24, 27.) During her employment as a power analyst, plaintiff received overall ratings of "competent" and "commendable." (Payne Depo. at 32–34.) Plaintiff was satisfied with these evaluations and "more or less" satisfied with her employment. (Payne Depo. at 34, 44.)

In March of 1989, plaintiff was promoted to the position of senior power analyst. (Payne Depo. at 39.) This job entailed assisting in the development of rates for Power Authority facilities in Southeast New York. (Def. Ex. 4; De Graffenried Depo. at 269.)

At the time of the promotion, De Graffenried was plaintiff's immediate supervisor. De Graffenried reported to Pellegrino, and Pellegrino reported to Hiney. (Payne Depo. at 42–43.) All three men approved plaintiff's promotion. (Def. 56.1 Stat. ¶ 16.) Plaintiff continued to report to De Graffenried during her tenure as a senior power analyst. (Payne Depo. at 85.)

In February of 1990, De Graffenried evaluated plaintiff and gave her a "competent" rating. Pellegrino approved the evaluation. (Def. 56.1 Stat. ¶ 17.) In January of 1991 and January of 1992, De Graffenried again gave plaintiff "commendable" ratings. Pellegrino approved both evaluations. (Def. 56.1 Stat. ¶¶ 18–19.)

Plaintiff was satisfied with the reviews she received as a senior power analyst. (Payne Depo. at 87.) Plaintiff "could live with" the reviews, although "in all honesty I merited more than what I was given." (Payne Depo. at 53.) Plaintiff made no complaints about the reviews she received during this period and had no problems dealing with her peers or her supervisors, including De Graffenried. (Payne Depo. at 57–58.)

Nevertheless, during this period, plaintiff "truly felt" that she was not "being treated the same" as other employees. Plaintiff admits that she did not raise these concerns with anyone at Power Authority. (Payne Depo. at 58–59.) Plaintiff had never heard any of the individual defendants use racial slurs and had never witnessed or heard of any incidents with racial overtones involving

any of the individual defendants. (Payne Depo. at 80–84.)

In March of 1992, plaintiff was promoted to the position of economist. (Payne Depo. at 84.) All three individual defendants approved the promotion, and Hiney made the ultimate decision to promote her. (Payne Depo. at 84–85.) Plaintiff admits that she could not have received the promotion without the approval of all three individual defendants. (Payne Depo. at 85.)

Defendants assert that the position of economist entailed "significantly greater" responsibilities than that of senior power analyst. (Pellegrino Depo. at 50.) While senior power analysts and economists were responsible for developing rates, economists were expected to work without direct supervision, to handle more complicated assignments, to produce an accurate product without the intervention of supervisors, to present and defend their own work, and to interact with customers, vendors, and utilities. (Pellegrino Depo. at 54, 93–94; De Graffenried Depo. at 267–70; compare Def. Ex. 4 with Def. Ex. 5.)

Plaintiff considered the promotion a "progressive leap," but not a "giant leap" forward. She admits that economists were expected to "grow" and to work more independently than senior power analysts. (Payne Depo. at 89.)

Prior to plaintiff's first formal evaluation as an economist, De Graffenried did not give plaintiff any negative "feedback" regarding her performance. (Payne Depo. at 109.) In February 1993, on her first evaluation as an economist, plaintiff received a "does not meet expectations" rating from De Graffenried which Pellegrino approved. (Def.Ex. 6.) The evaluation detailed numerous deficiencies in plaintiff's work, including a failure to complete two assignments (Def. Ex. 6, Goal 4), insufficient progress towards completing another (Def. Ex. 6, Goal 5), and poor performance on the development of a financial plan on another assignment. (Def. Ex. 6, Goal 6.) De Graffenried criticized the timeliness and quality of plaintiff's work product, and stated that plaintiff had demonstrated an insufficient level of knowledge and skill in the performance of three of her seven assignments. (Def. Ex. 6, Schedule II.) The eval-

uation called for another evaluation within three to six months (Def. Ex. 6, Form 6) and stated that a demotion might be warranted if plaintiff failed to "meet the requirements of the position" of economist. (Def. Ex. 6, Schedule I.) Attached to the five page standard evaluation form was a typed, six page comment section written by De Graffenried. This comment section discussed plaintiff's performance in considerable detail.

Plaintiff refused to sign the evaluation. (Def. Ex. 6, Form 6.) Instead, she submitted a one page comment which explained some of the delays in her work product and which concluded by stating that plaintiff "had no idea that me and my productivity were being perceived as indicated," but that "if this is truly the case, then I am perfectly willing to comply with any suggestions and or directions afforded to me in meeting the expectations of my job's scope and to promote a more harmonious atmosphere with my constituents." (Def. Ex. 6, "Performance Review Comments.") Plaintiff's rebuttal was aimed at explaining the reasons for any perceived deficiencies, and did not deny that deficiencies existed in the final products. (Def. Ex. 6, "Performance Review Comments.") Plaintiff's comments did not mention race discrimination. Plaintiff concedes that she did not contest her evaluation on the ground of race discrimination, although she "suspected" race discrimination and discussed her suspicion with her husband. (Payne Depo. at 120–21.)

Plaintiff testified that her suspicion hardened when, following her evaluation, she met with De Graffenried in an attempt to refute certain criticisms: "I met with him again and I showed him and when he didn't change that rating that's when I knew what he was doing, what was being done was not a mistake. It was being done deliberately, and was being done by him only I didn't know." (Payne Depo. at 122.)

When plaintiff subsequently met, at De Graffenried's suggestion, with a human resources employee at Power Authority, plaintiff did not discuss the possibility that the negative review was based on race discrimination. (Payne Depo. at 127–28, 140.)

Plaintiff did not change any of her work habits following the February evaluation because "it was not true, that's the whole thing. I haven't changed, I've always done my job." Plaintiff did not believe that there was "anything" in the February evaluation which she would "want to put into practice" to improve her work. (Payne Depo. at 134–35.) Plaintiff felt that there were no areas of her work as an economist which could be "fairly criticized." (Payne Depo. at 101–02.)

In the fall of 1993, De Graffenried met with Pellegrino and a human resources representative of Power Authority. De Graffenried recommended that plaintiff be demoted to senior power analyst, and Pellegrino supported the recommendation. While outright dismissal was considered as an option, De Graffenried believed that plaintiff could perform acceptably at her previous level of senior power analyst. (De Graffenried Depo. at 173–75.)

In December of 1993, plaintiff again received a "does not meet expectations" evaluation. (Def. Ex. 10.) The evaluation was prepared by De Graffenried and approved by Pellegrino. De Graffenried noted improvements in some areas, but strongly criticized the number of errors continuing to appear in plaintiff's work, noted that plaintiff took "far longer" to complete analytical tasks than "necessary," and described plaintiff's inability to develop innovative ideas and to master new concepts. (Def. Ex. 10, Form 5C.) The evaluation stated that "a decision has been made" to "return" plaintiff to the position of senior power analyst. Plaintiff refused to sign the evaluation, and wrote in the employee comments section that the review did not "depict[ ] an accurate overview of my job performance." (Payne Depo. at 116; Def. Ex. 10.)

With the approval of De Graffenried, Pellegrino, and Hiney, plaintiff was demoted in January of 1994. (Payne Depo. at 170–71, 175.) At no time had plaintiff raised her concern about discrimination with anyone at Power Authority. (Payne Depo. at 150–51.) Nor had she inquired with Power Authority's human resources department to see if she could speak to someone confidentially about her suspicions. (Payne Depo. at 170.)

On April 29, 1994, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission, asserting that she had received poor evaluations and had been demoted because of her sex and race. (Def.Ex. 12.)

Plaintiff testified at her deposition that discrimination was the cause of the discrepancy between her view and that of De Graffenried with respect to her performance as an economist, and stated that it was the performance reviews which "form[ed] the basis" of her charges. (Payne Depo. at 286–87, 305.) Plaintiff did not believe that negative reviews were being given "to my white counterparts." (Payne Depo. at 305.)

In her next performance review, in August of 1994, plaintiff, now as a senior power analyst, received a "meets expectations" rating from De Graffenried. (Def. Ex. A ¶ 7, Ex. 15.)[1] Although De Graffenried gave plaintiff a "meets expectations" rating overall, on two individual projects, he rated her "does not meet expectations." Additionally, he noted that plaintiff had "avoided" more "technical" assignments, and wrote, "it is possible that [plaintiff] is not in a job for which her strengths and true skills were intended. I would encourage her to seek career counseling to determine her true career 'anchors,' skills set, and ideal job function." (Def. Ex. 15, Form 5C.) Plaintiff refused to sign the evaluation and submitted a written rebuttal which alleged that the evaluation was an act of retaliation against her for filing charges with the EEOC. (Def.Ex. 15.) De Graffenried responded in a memorandum. He argued that his suggestion that plaintiff seek counseling "is a positive suggestion and cannot be reasonably viewed as anything else," and detailed various inadequacies in plaintiff's job performance. (Def.Ex. 15.)

De Graffenried testified at his deposition that plaintiff's performance as a senior power analyst after her demotion was not necessarily inferior to her earlier performance as a senior power analyst. De Graffenried explained, and plaintiff did not dispute, that deregulation in the industry had led to downsizing at Power Authority, and hence to increased responsibilities for senior power analysts. (De Graffenried Depo. at 180–89; Payne Depo. at 98–99.)[2] De Graffenried said that he wanted to retain plaintiff and "work through whatever difficulties there might be" with her performance because he believed that she could perform at the "meets expectations" level. (De Graffenried Depo. at 184–85.)

On September 19, 1994, plaintiff filed a second charge with the EEOC, asserting that De Graffenried's negative evaluation was retaliatory. (Def.Ex. 12.)

In March of 1995, De Graffenried gave plaintiff a "meets expectations" rating. (Def.Ex. 16.) This review was more positive than the previous review, and stated, "while she has done well on a number of administrative tasks recently, I would like to expand the scope of Linda's responsibilities to a broader variety of tasks as reflected in the Senior Power Analyst's job description." (Def. Ex. 16, Form 6.) This review was approved by Louise Mormon, the recently hired senior vice president of marketing and development. (Def. Ex. 16, Form 6, Def. 56.1 Stat. ¶ 41.) Plaintiff refused to sign the review and again submitted a written response which focused on De Graffenried's grade of "does not meet expectations" for the "training and counseling" portion of the review. Plaintiff emphasized that she had "not refused any career training offered." (Def.Ex. 16.)

---

1. Prior to 1993, Power Authority employees were given one of five possible ratings: distinguished, commendable, competent, acceptable, or less than acceptable. Beginning in 1993, employees were given one of three possible ratings: exceeds expectations, meets expectations, and does not meet expectations. (Def. 56.1 Stat. ¶ 4.)

2. See, e.g., De Graffenried Depo. at 182–83, "Clearly, the character of the work had changed, so there is not a direct comparability between the type of work that is performed by a grade 3 under a monopoly status quo situation and the type of work that's required in this time period and today. It's far more intensive.... So her review here is in the context of a lot more work per capita, and this was how she performed in that context."

Mormon reorganized the department in 1995, and Eva Lubeck became plaintiff's direct supervisor. (De Graffenried Depo. at 228–34.) Following the reorganization, job titles were "reclassified," and plaintiff now holds the title of analyst. (Payne Depo. at 46.) In March of 1996, Lubeck reviewed plaintiff, gave her a "meets expectations" rating, and noted that plaintiff's job performance had improved since the previous review, in that she "became more involved in technical assignments" which she performed well. (Def. Ex. 17, Form 5C.) De Graffenried and Mormon approved the review. (Def. Ex. 17, Form 6.) Plaintiff signed the review and commented, "the blatant inequities regarding my job performance that I have complained about in my previous reviews are not reflected in this review; for this I am thankful." (Def. Ex. 17, Form 6.)

In February of 1997, Lubeck again gave plaintiff a meets expectations rating, which De Graffenried approved. Plaintiff signed the evaluation. (Def.Ex. 18.)

At her deposition, plaintiff testified that she believed that defendants were predisposed not to promote African–American women to the position of economist and beyond. The basis of her belief was that, "I believe that there was a Black female that had been promoted to Grade 4 [economist] that was subsequently demoted." Plaintiff was also told by another African–American woman in the White Plains office billing department that this woman had received a negative evaluation because of her race. (Payne Depo. 160–63.) Plaintiff also heard from a "dark-complected" Hispanic woman who "thought that she was being treated unfairly because of the race issue." (Payne Depo. at 164.) Plaintiff did not know in what department this woman worked. (Payne Depo. at 164.) Plaintiff admitted that she had never worked with either of these women, read their performance reviews, or seen their work product. (Payne Depo. at 165.) Payne learned of these women's complaints during "casual conversation like in the ladies' room." (Payne Depo. at 165.) Plaintiff could not recall when her conversations with these women had taken place. (Payne Depo. at 165.) Additionally, plaintiff had heard that a black female had been demoted in 1987 from the position of senior billing supervisor. (Payne Depo. at 167.)

Plaintiff admitted that she has never discussed her belief that defendants were "predispos[ed]" not to promote African–American women with anyone at Power Authority because, "I'm not interested in confrontation.... I'm not going to do things that I feel I'm going to lose in, that doesn't serve any purpose." (Payne Depo. at 168–69.)

## Discussion

### Discrimination

Title VII cases are analyzed under the three-step burden shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). First, the plaintiff must establish a *prima facie* case of discrimination; if plaintiff is successful, the burden of production, but not persuasion, shifts to the defendant to offer a legitimate, nondiscriminatory reason for its employment decision; finally, plaintiff must show that the proffered reason was a pretext for illegal discrimination. *Scaria v. Rubin*, 117 F.3d 652, 653–54 (2d Cir.1997).

On a defendant's motion for summary judgment, the defendant bears the burden to demonstrate that no genuine issue of material fact exists. If, after resolving all ambiguities and drawing all inferences in favor of the plaintiff, no rational jury could find in favor of the plaintiff because the evidence to support plaintiff's case is so slight, then there is no genuine issue of material fact and a grant of summary judgment is proper. *Gallo v. Prudential Residential Services, Ltd.*, 22 F.3d 1219, 1223–24 (2d Cir.1994); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (summary judgment should be granted against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

In an employment discrimination case, the court must be cautious about granting summary judgment to an employer when its intent is at issue. *Gallo*, 22 F.3d at 1224.

Ultimately, the court must analyze the evidence, along with the reasonable inferences that may be drawn from it, and decide if it raises a jury question as to whether the plaintiff was a victim of discrimination. *Scaria v. Rubin*, 117 F.3d at 654.

■ In this case, neither side argues that the other has failed to meet its burden under the first two steps of the *McDonnell Douglas* test. (Def. Mem. at 6; Pl. Mem. at 8.) The issue on this portion of the motion is whether plaintiff has raised a genuine issue of disputed fact with respect to her claim that Power Authority's articulated reasons for negatively evaluating and then demoting her were a pretext for race discrimination.[3]

■ Plaintiff disputes De Graffenried's evaluation of her performance as an economist and the subsequent decision to demote her. Missing from this dispute, however, is evidence—either direct or circumstantial—which points to the conclusion that Power Authority's explanations for demoting plaintiff are a pretext for race discrimination. *Cf. Grady v. Affiliated Central, Inc.*, 130 F.3d 553, 561 (2d Cir.1997) (dispute of fact as to actual reason defendant fired plaintiff did not suffice to defeat defendant's motion for summary judgment).

Plaintiff repeatedly testified at her deposition that the bases of her discrimination claim were the allegedly inaccurate performance reviews, her demotion, and her subjective, unparticularized belief that she was treated differently because she is an African–American. Plaintiff admits that she neither heard nor observed anything to indicate that De Graffenried, Pellegrino, or Hiney harbored racial animus or had ever treated anyone differently because of race. Plaintiff cannot point to any statement or action by anyone associated with Power Authority which indicates that plaintiff was treated differently because of her race. And, plaintiff cannot point to a single instance of racial preference occurring at Power Authority.

[4] In opposing Power Authority's summary judgment motion, plaintiff has submitted a statement under oath that "after advising me of the promotion, Mr. de Graffenried informed me that Defendant Pellegrino informed him that the promotion is the last thing I should expect from the Defendants." (Payne Certification ¶ 6.) This accusation was not a part of plaintiff's EEOC charges, is not in the complaint in this action, and was not inquired into by plaintiff at the deposition of De Graffenried or Pellegrino. It also directly contradicts plaintiff's deposition testimony and is confused in plaintiff's own memorandum of law. (Pl. Mem. at 11, arguing that *Hiney* made the statement at issue.) Even assuming that it is relevant to race discrimination, plaintiff's new statement cannot defeat this motion. *See Raskin v. Wyatt Co.*, 125 F.3d 55, 63 (2d Cir.1997) (affirmation in opposition to summary judgment motion cannot create issue of fact by contradicting the affiant's prior deposition testimony).

Nor is there circumstantial evidence of race discrimination. Plaintiff performed moderately well as a power analyst and then as a senior power analyst. After five years with Power Authority, she was promoted to the position of economist, where she received negative evaluations from the same supervisors who had promoted her. Plaintiff's written objection to her first negative evaluation did not deny the specifics of the evaluation, but focused on explaining reasons for the perceived inadequacies in her work. Additionally, plaintiff stressed that she was "perfectly willing to comply with any suggestions" for improvement. (Def.Ex. 6.) Plaintiff admits, however, that she did not alter her work habits based on the negative evaluation, and after another negative evaluation, she was demoted. De Graffenried testified, and plaintiff does not dispute, that demotion was chosen by defendants as an alternative to outright dismissal. Plaintiff's written objection to her second negative evaluation did not contest the details of the evaluation. Following her demotion, plaintiff received

---

**3.** The complaint is unclear as to whether plaintiff is suing Hiney, Pellegrino, and De Graffenried under Title VII. Since individual defendants cannot be held personally liable under Title VII, I read the complaint as alleging a Title VII viola-tion only against Power Authority. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir.1995) (holding that individual defendants with supervisory control over plaintiff cannot be held personally liable under Title VII).

evaluations which were generally consistent with her prior evaluations as a senior power analyst. Since 1995, her evaluations—which De Graffenried continues to oversee—have improved, as plaintiff has gradually taken on additional responsibilities.

The statistics presented by plaintiff—Power Authority's EEO–4 forms—lack probative value. Power Authority's EEO–4 form from 1995 apparently consolidates information regarding Power Authority employees throughout New York State for the year 1995, and, apparently, indicates that 45 of the 1,053 employees who were categorized as "professionals" were African–Americans; two of the 171 professionals earning $70,000 or more in annual salary were African–American; and, five of 215 "officials/administrators" were African–American. (EEO–4 report dated Dec. 15, 1995, at 2.) Plaintiff asserts that these three figures and "similar data" from 1993 and 1994 demonstrate Power Authority's "preference for not promoting black employees." (Pl. Mem. at 12.)[4]

Plaintiff has not proffered any information to explain or provide context for the EEO–4 reports, and has adduced no evidence which would permit rational evaluation of the raw figures in the reports. Nor does plaintiff attempt in her present motion papers to discuss the significance of the figures, either generally or as applied to her situation in particular. Thus, the statistics do not create a material dispute of fact. *See Hudson v. International Business Machines Corp.*, 620 F.2d 351, 355 (2d Cir.1980) (statistics showing racial composition of employer's workforce could not "standing alone" show that employer discriminated against plaintiff because of his race), *cert. denied*, 449 U.S. 1066, 101 S.Ct. 794, 66 L.Ed.2d 611 (1980); *Robinson v. Metro–North Commuter R.R. Co.*, 1998 WL 17742 at *9 (generalized statistical evidence cannot itself refute, for summary judgment purposes, an employer's nondiscriminatory explanation for an adverse employment action). *Accord Villanueva v. Wellesley College*, 930 F.2d 124, 131 (1st Cir. 1991) (raw statistics showing percentage of

minorities hired by plaintiff over eight year period were "inadequate absent some further indication of their relevance" to show employer had discriminatory motive), *cert. denied*, 502 U.S. 861, 112 S.Ct. 181, 116 L.Ed.2d 143 (1991).

In sum, there is no evidence from which a factfinder could infer that Power Authority discriminated against plaintiff because of her race. *Cf. Grady v. Affiliated Central, Inc.*, 130 F.3d at 561 (affirming grant of summary judgment on age discrimination claim where record was "bereft" of discriminatory evidence and where plaintiff's conclusions as to discrimination were "purely speculative"); *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985) (conclusory allegations of discrimination insufficient to avoid summary judgment), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985); *Shabat v. Blue Cross Blue Shield of Rochester Area*, 925 F.Supp. 977, 988 (W.D.N.Y.1996) (employee's disagreement with adverse employment action did not create material dispute of fact as to whether action was the result of discrimination; employee was required to proffer some evidence of discrimination beyond his own subjective beliefs), *aff'd sub nom. Shabat v. Billotti*, 108 F.3d 1370 (2d Cir.1997).

It should be noted that the individuals whom plaintiff accuses of demoting her for discriminatory reasons are the same individuals who had promoted her less than two years earlier. *Cf. Grady*, 130 F.3d at 560 (on summary judgment motion, fact that the person who made the decision to fire plaintiff was the same person who made the decision to hire her was a factor "strongly suggest[ing] that invidious discrimination was unlikely").

■ Plaintiff's main argument against summary judgment for Power Authority is that a jury could find at trial that Power Authority lied about the reason for her demotion and could infer discriminatory intent from this finding alone. (Pl. Mem. at 8–9, "if a rational jury accepted the Plaintiff's ver-

**4.** Plaintiff was promoted to economist in 1993 and demoted in 1994. The November 15, 1993, EEO–4 report indicates that six of 298 "officials/administrators" were African–American and 44 of 861 "professionals" were African–American. (EEO–4 report dated Nov. 15, 1993.) No reports are presented for 1994.

sion of the facts, then it might conclude that the Defendant had created false charges as a pretext for firing the Plaintiff, thus precluding summary judgment.") It is true that in a given case a finding of discriminatory intent may be grounded in disbelief of an employer's proffered reason for discharge, especially if accompanied by a suspicion of mendacity. *See Henry v. Daytop Village, Inc.,* 42 F.3d 89, 96 (2d Cir.1994). But, for a rational jury to find discriminatory intent, there must be evidence which points to discrimination. *See Fisher v. Vassar College,* 114 F.3d 1332, 1338 (2d Cir.1997) ("the sufficiency of the finding of pretext to support a finding of discrimination depends on the circumstances of the case"), *cert. denied,* —— U.S. ——, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998). In this case, there is no such evidence.

### Retaliation

Plaintiff claims that De Graffenried's August 1994 evaluation was retaliation for her filing of discrimination charges with the EEOC in April of 1994. The August 1994 evaluation was plaintiff's first evaluation after her demotion and after the filing of charges with the EEOC.

A retaliation claim under Title VII is subject to the three step test of *McDonnell Douglas.* To make out a *prima facie* case of retaliation which satisfies the first step of *McDonnell Douglas,* a plaintiff must show participation in a protected activity known to the defendant, an adverse employment action, and a causal connection between the protected activity and the adverse employment action. *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1308 (2d Cir.1995). An adverse employment action is one which affects the terms, privileges, duration, or conditions of employment. *Yerdon v. Henry,* 91 F.3d 370, 378 (2d Cir.1996). A defendant may prevail on a summary judgment motion by showing that there is an absence of evidence to support the plaintiff's retaliation claim. *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 714 (2d Cir.1996).

Even if construed as a negative evaluation, De Graffenried's August 1994 evaluation of plaintiff does not itself constitute an adverse employment action, and plaintiff does not contend otherwise. *Cf. Johnson v. Frank,* 828 F.Supp. 1143, 1153 (S.D.N.Y. 1993) (mid-year performance evaluation giving plaintiff an "unacceptable" rating did not constitute an adverse employment action because it did not affect the terms, privileges, duration or condition of the plaintiff's employment).

Instead, plaintiff makes two arguments in support of her claim of retaliation. First, plaintiff asserts that she was denied a mid-year salary increase because "no overall rating was provided" by De Graffenried on the August 1994 evaluation. (Pl. 56.1 Stat. ¶ 39; see also Pl. Mem. at 15, "in August 1994, the Plaintiff did not receive an overall evaluation at all;" cf. Amended Compl ¶¶ 11–12.) Plaintiff proffers no evidence that she was eligible for a pay increase in August of 1994, or that she would have been eligible but for De Graffenried's evaluation. More to the point, plaintiff's claim is not that she was denied a merit increase but that she was denied a merit increase because De Graffenried failed to give her an overall rating. This assertion is plainly inaccurate. De Graffenried has affirmed that in completing the final page of plaintiff's August 1994 evaluation, he mistakenly placed a checkmark in the wrong row, thus leaving the overall rating row blank; the misplaced mark appears on the line immediately above the line for "meets expectations" in the overall rating row. (De Graffenried Aff. ¶ 7; Def. Ex. 15, Form 5C.) In her written rebuttal to De Graffenried's evaluation, plaintiff made no mention of the De Graffenried's alleged failure to provide an overall rating. No rational factfinder could conclude that De Graffenried withheld an overall rating; the only rational inference is that the overall rating was "meets expectations."

Second, plaintiff argues that De Graffenried's August 1994 evaluation is "sufficient to damage the Plaintiff's career" at Power Authority. (Pl. Mem. at 15.) Plaintiff proffers no evidence to support this argument. Moreover, the evidence in the record does not support plaintiff's contention. Since 1994, plaintiff's evaluations (which De Graffenried continues to oversee) have steadily

improved, and plaintiff has assumed greater job responsibilities. While plaintiff argues that the August 1994 evaluation and (apparently) subsequent evaluations were "intended to stop the Plaintiff's advancement" (Pl. Mem. at 15), plaintiff does not point to a single opportunity or benefit that has been denied to her since she filed her EEOC complaint. Similarly, the contention in plaintiff's memorandum of law that "the Defendants assigned the Plaintiff non-technical, substantially clerical assignments, making it impossible for the Plaintiff to progress" (Pl. Mem. at 15) lacks any evidentiary citation or support.

In sum, there is no evidence on which a jury could find for the plaintiff on the retaliation claim, and summary judgment is warranted. *Cf. Van Zant*, 80 F.3d at 714 (affirming grant of summary judgment where plaintiff's retaliation claim was supported only by conclusory allegations).

*The § 1983 Claim*

Defendants are also entitled to summary judgment on plaintiff's claim under 42 U.S.C. § 1983. This claim alleges the same facts as the Title VII claim, and plaintiff does not dispute that her § 1983 claim can survive summary judgment only if her Title VII claim does as well. Accordingly, defendants' motion for summary judgment as to the § 1983 claim is granted. *See generally Annis v. County of Westchester*, 136 F.3d 239, 245–46 (2d Cir.1998) (applying *McDonnell Douglas* framework to § 1983 claim based on sex discrimination in employment).

In view of the foregoing, I need not reach the motion of Hiney, Pellegrino, and De Graffenried to dismiss them from the complaint for reasons that do not apply to Power Authority.

*Conclusion*

For the reasons discussed above, defendants' motion for summary judgment is granted.

SO ORDERED.