**Glenn KANE, Plaintiff,**

v.

**James KREBSER, individually and in his capacity as Chief of Police for the Town of Ossining, The Town of Ossining, and The Town of Ossining Police Department, Defendants.**

No. 98 Civ. 2287(WCC).

United States District Court,
S.D. New York.

April 12, 1999.

Dranoff & Goldschmidt, LLP, Pearl River, NY, (Katherine M. Knight, of counsel), for plaintiff.

Thomas M. Bona, P.C., White Plains, NY (Thomas M. Bona, James C. Miller, of counsel), for defendants.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiff's motion to amend the complaint pursuant to Federal Rules of Civil Procedure 15(a) is hereby granted in part to the extent that it alleges retaliation for the exercise of First Amendment rights in violation of 42 U.S.C. § 1983 (" § 1983"). Defendants' motion under Fed.R.Civ.P. 12(c) is granted in part and denied in part; all claims under § 1983 for the deprivation of liberty without due process are dismissed with prejudice, all claims under § 1983 for the deprivation of property without due process are dismissed with leave to re-plead, and all claims under 42 U.S.C. § 1985 (" § 1985") are dismissed with prejudice.[1]

## BACKGROUND

Plaintiff, Glen Kane, is a police sergeant for the Town of Ossining Police Department ("the Department" or "the Police Department"). Plaintiff here sues James Krebser ("Krebser"), the Town of Ossining ("the Town"), and the Town of Ossining Police Department under § 1983 for, inter alia, abridging his First Amendment right to freedom of speech and his Fourteenth Amendment right to due process; plaintiff also claims that defendants conspired to deprive him of those constitutional rights in violation of § 1985.[2]

Plaintiff first alleges that pursuant to his duties as the Terminal Agency Coordinator, he informed Krebser and Lieutenant Donato on June 29, 1996 of security violations involving the police computer database ("NYSPIN"). Proposed Amended Complaint ¶ 16. According to plaintiff, Lieutenant Donato informed plaintiff that he was aware of this breach and intentionally did not inform the State Police of this problem for fear of losing the equipment if the violation were disclosed. *Id.* Nonetheless, on August 28, 1996, plaintiff sent a letter to the President of the Town of Ossining Police Association to inform him of this breach. *Id.* The very next day, August 29, 1996, allegedly after being informed that this letter was sent, Krebser relieved plaintiff as Terminal Agency Coordinator without explanation. Proposed Amended Complaint ¶ 17.

Second, plaintiff contends that on or about February 13, 1997, Lieutenant Donato ordered plaintiff to falsify billing records. Proposed Amended Complaint ¶ 20. Plaintiff claims that he expressly refused to alter the billing records, and Krebser, who apparently learned of this refusal, told plaintiff that he could no longer "trust" him. *Id.*

Further, plaintiff alleges that on April 1, 1997, while working as a supervisory officer, he gave permission to two officers, pursuant to their requests, to take "personal days" and not report for their assigned shifts. Proposed Amended Complaint ¶¶ 24–25. Plaintiff claims that on April 7, 1997, without giving him proper notice or opportunity to respond, and without following customary practice within the Department, Krebser, issued a "reprimand letter" to be placed in plaintiff's file for one

---

1. By letter dated March 19, 1999, plaintiff voluntarily withdraws any claim pursuant to § 1983 for a violation of his Fourth Amendment rights.

2. We only address those claims raised by defendants in their jointly filed Memorandum of Law in Support of their Motion to Dismiss Pursuant to Rule 12(c). Therefore, we are silent as to plaintiff's Fourth, Fifth, Sixth, and Seventh claims.

year. Proposed Amended Complaint ¶¶ 26–31. However, defendant contends and plaintiff does not dispute that Krebser changed his mind and decided to remove this letter from plaintiff's file the day after it was filed. Affidavit of James C. Miller ¶ 6.

Finally, plaintiff alleges that in retaliation for serving a notice of claim upon the Town and Krebser in December of 1997, Krebser denied plaintiff's request for a change of duty from a Saturday to a Monday shift. Proposed Amended Complaint ¶¶ 33–35.

All three defendants, Krebser, the Town, and the Police Department, first moved pursuant to Rule 12(c) to dismiss the complaint in its entirety. Plaintiff timely served his opposition papers to defendants' 12(c) motion, and simultaneously cross-moved for leave to amend his original complaint pursuant to Rule 15(a). Since plaintiff provided the Court with his proposed amended complaint, and since defendants argue in their reply brief that all arguments made in their original 12(c) motion apply with equal force to plaintiff's proposed amended complaint, our analysis will focus on the proposed amended complaint and not the original complaint.

## DISCUSSION

### I. *Standard for Leave to Amend Complaint*

■ Leave to amend a pleading should be freely granted unless amendment would be futile, leave was sought in bad faith, or granting leave would cause undue delay or prejudice the opposing party. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 234–35 (2d Cir.1995). The only claim made by defendants in opposition to plaintiff's motion to amend

the complaint is that such amendment would be futile. The amendment of a complaint would be futile if the amended pleading would not survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). *See S.S. Silberblatt, Inc. v. East Harlem Pilot Block–Bldg. 1 Hous. Dev. Fund Co.*, 608 F.2d 28, 42 (2d Cir.1979); *Nettis v. Levitt*, 1998 WL 397880, *2 (S.D.N.Y. July 15, 1998). Thus, the appropriate standard for granting leave to amend the complaint is that established by Rule 12(b)(6).[3]

For purposes of Rule 12(b)(6), a claim cannot be dismissed "unless it appears beyond doubt that the [claimant] can prove no set of facts in support of his claim which would entitle him to relief." *Padavan v. United States*, 82 F.3d 23, 26 (2d Cir.1996) (quoting *Hughes v. Rowe*, 449 U.S. 5, 10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980)). All well-pleaded factual allegations will be accepted as true and all reasonable inferences must be drawn in favor of the claimant. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 173 (2d Cir. 1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 870, 142 L.Ed.2d 772 (1999).

### II. *Claims under 42 U.S.C. § 1983 For Retaliation for the Exercise of First Amendment Rights*

#### A. *Legal Standard*

■ To prevail on this § 1983 freedom of speech claim, plaintiff must demonstrate by a preponderance of the evidence that: 1) the speech at issue is protected; 2) that he suffered an adverse employment action; and 3) there was a causal connection between the protected speech and the adverse employment action. *Blum v. Schlegel*, 18 F.3d 1005, 1010 (2d Cir.1994).

#### B. *Protected Speech*

■ In order to establish a violation of one's freedom to speak, that speech must

---

**3.** Defendants rightly denominate their motion as made pursuant to 12(c) since they have already filed an answer, but the legal standards for assessing a 12(c) motion and a

12(b)(6) motion are identical. *See, e.g., GATX Leasing Corp. v. Nat. Union Fire. Ins. Co.*, 64 F.3d 1112, 1114 (7th Cir.1995).

**546**

be of a kind protected by the First Amendment. Thus, the speech must be of "public concern," meaning that it relates to "any matter of political, social or other concern to the community." *Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).

> [W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

*Id.* at 147, 103 S.Ct. 1684. Here, plaintiff alleges that, pursuant to his duties as the Terminal Agency Coordinator, he informed Krebser and Lieutenant Donato of security violations involving the police computer database. Proposed Amended Complaint ¶ 16. Lieutenant Donato, according to plaintiff, informed plaintiff that he was aware of this breach and intentionally did not inform the State Police of the problem for fear of losing the equipment if the breach was disclosed. *Id.* Nonetheless, according to plaintiff, on August 28, 1996, plaintiff sent a letter to the President of the Town of Ossining Police Association to inform him of this breach. *Id.* The very next day, August 29, 1996, after allegedly being informed that this letter was sent, Krebser relieved plaintiff as Terminal Agency Coordinator without explanation. Proposed Amended Complaint ¶ 17.

Clearly, this incident involves speech "of public concern" which the First Amendment was designed to protect. Plaintiff spoke out about a security breach concerning a statewide police information network that contained highly sensitive and confidential records. Such a breach, and any attempt by any of the defendants to conceal it, are clearly matters of public concern. *Vasbinder v. Ambach*, 926 F.2d 1333, 1340 (2d Cir.1991); *Rookard v. Health & Hosps. Corp.*, 710 F.2d 41, 46 (2d Cir.1983); *Lundgren v. Curiale*, 836 F.Supp. 165, 168 (S.D.N.Y.1993). The public has a vested interest in prohibiting members of its own police department from permitting and actively concealing breaches of security and confidentiality in regard to police records.

## C. *Adverse Employment Action*

■ Defendants also claim that plaintiff fails to allege sufficient adverse employment action. Plaintiff claims that he was removed as Terminal Agency Coordinator in retaliation for his speech Proposed Amended Complaint ¶ 17. We cannot say, as a matter of law, that removing plaintiff from the Terminal Agency Coordinator position does not involve a significant aspect of the employment relationship. *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 75, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990). While there are "no bright-line" rules for determining whether conduct constitutes adverse employment action, we believe that plaintiff's allegations state a claim under § 1983. *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir.1997). Plaintiff was stripped of his responsibility for coordinating computer operations, allegedly the day after he revealed to his superiors a security breach in the computer system. Adverse employment action need not entail demotion or termination, *Rutan*, 497 U.S. at 75, 110 S.Ct. 2729, and numerous courts have found that diminution of job "responsibilities," *McCabe v. Sharrett*, 12 F.3d 1558, 1564 (11th Cir.1994), being given "inferior and less desirable work duties," *Neratko v. Frank*, 31 F.Supp.2d 270, 283 (W.D.N.Y. 1998), or being "deprived of perquisites," *Noyer v. Viacom, Inc.*, 22 F.Supp.2d 301, 305 (S.D.N.Y.1998) all constitute adverse employment action.

■ Finally, plaintiff also apparently argues, somewhat cryptically, that the reprimand letter, filed and then expunged the following day, violated his rights under § 1983, since the letter was in retaliation for his speech regarding the computer se-

curity breach and the false billing. All claims for First Amendment retaliation related to the reprimand letter must fail. In contrast to the alleged loss of the Terminal Agency Coordinator position, plaintiff fails to allege that this letter created "a materially adverse change in the terms and conditions of employment." *Torres v. Pisano,* 116 F.3d 625, 640 (2d Cir.1997) (internal quotations omitted), *cert. denied,* —— U.S. ——, 118 S.Ct. 563, 139 L.Ed.2d 404 (1997); *see also Wanamaker,* 108 F.3d at 466; *de la Cruz v. New York City Human Resources Admin.,* 82 F.3d 16, 21 (2d Cir. 1996). Plaintiff's completely speculative argument that, despite being in the file for only one day, the letter could "foreclose[ ] future employment opportunities," falls far short of alleging a materially adverse change in the conditions of his employment. Plaintiff's Memorandum of Law at 6. This is especially true given that plaintiff does not identify anyone who could have learned of this letter, nor any promotion or other advancement opportunity which he sought and which was denied after the letter was filed. Other courts in this district have found that a negative evaluation, standing alone, without any attempt to show how such an evaluation actually affected the plaintiff's terms and conditions of employment, cannot constitute adverse employment action. *Payne v. State of New York Power Authority,* 997 F.Supp. 492, 500 (S.D.N.Y.1998); *Johnson v. Frank,* 828 F.Supp. 1143, 1153 (S.D.N.Y. 1993). We note, too, that in those cases, the negative evaluation remained on file, rather than being removed a short time after filing. As the Second Circuit has held, "conclusory, unsupported claims" that the putatively retaliatory act "had an injurious effect on [plaintiff's professional] reputation" is insufficient to state a retaliation claim. *Wanamaker,* 108 F.3d at 466; *see also Klem v. Popular Ford Sales, Inc.,* 975 F.Supp. 196, 205 (E.D.N.Y.1997).

### D. *Causal Connection*

As a necessary element of a retaliation claim under § 1983, plaintiff must show that there was a causal connection between the exercise of his constitutional rights and the adverse employment action taken against him. *Blum,* 18 F.3d at 1010. Circumstantial evidence is often the only means available to prove such claims of retaliation. *See Chertkova v. Connecticut General Life Ins. Co.,* 92 F.3d 81, 87 (2d Cir.1996); *Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 37 (2d Cir.1994). Rarely can plaintiffs obtain documents or testimony wherein an employer specifically proclaims his or her desire to retaliate against an employee for engaging in protected speech. As the Second Circuit has held, "Because an employer who discriminates is unlikely to leave a 'smoking gun' attesting to a discriminatory intent, a victim of discrimination is seldom able to prove his claim by direct evidence, and is usually constrained to rely on circumstantial evidence." *Chambers,* 43 F.3d at 37; *see also Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 464 (2d Cir.1989) ("employers are rarely so cooperative as to include a notation in the personnel file that their actions are motivated by factors expressly forbidden by law") (internal quotations omitted); *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1112 (2d Cir. 1988) ("direct evidence of discrimination is difficult to find precisely because its practitioners deliberately try to hide it. Employers of a mind to act contrary to law seldom note such a motive in their employee's personnel dossier").

■ The requisite causal connection between the protected activity and the adverse employment action can sometimes be established indirectly, for example by showing that the protected activity was closely followed by discriminatory treatment. *See, e.g., Sumner v. United States Postal Svc.,* 899 F.2d 203, 209 (2d Cir. 1990); *Szoke v. Carter,* 974 F.Supp. 360, 368 (S.D.N.Y.1997). This appears to be such a case. According to plaintiff, on August 28, 1996, he sent a letter to the President of the Town of Ossining Police Association to inform him of the breach of

computer security. Proposed Amended Complaint ¶ 16. Plaintiff alleges that the very next day, August 29, 1996, after Krebser was informed of this, he relieved plaintiff as Terminal Agency Coordinator without explanation. Proposed Amended Complaint ¶ 17. Such action, immediately following protected speech, can suffice to establish the necessary causal connection between the speech and the action taken. The inference of such a connection is unusually strong here in view of the allegation that on August 28, Lieutenant Donato, in the presence of Krebser, specifically stated that he did not want the security violation reported for fear of losing the equipment. Proposed Amended Complaint ¶ 16. Moreover, the position plaintiff lost, administering computer operations, was directly related to the content of his speech, which further suggests the retaliatory nature of his removal. Certainly, given these facts, we cannot say that granting leave to amend would be futile, and plaintiff may therefore amend his complaint to include First Amendment claims related to his removal as Terminal Agency Coordinator.

### III. *Plaintiff's Claim Under § 1983 for a Violation of Due Process*

#### A. *Legal Standard*

■ In order to succeed on a claim of deprivation of procedural due process, the plaintiff must establish that the state action deprived him of a protected property or liberty interest. *White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1060–61 (2d Cir.1993). We will assess each interest alleged by plaintiff in turn.

#### B. *Liberty Interest*

■ Although his argument is not a model of clarity, plaintiff apparently contends that the letter of reprimand, which was expunged from plaintiff's record shortly after it was filed, deprived him of a protected liberty interest. This claim is apparently offered as an alternative to plaintiff's First Amendment argument related to the reprimand letter. Although defendants contend and plaintiff does not deny that the letter was removed from the file only one day after it was filed, plaintiff, because its removal "was never made public," argues that the defamatory nature of the letter, will "foreclose[ ] future employment opportunities for plaintiff." Plaintiff's Memorandum of Law at 6.

■ The Supreme Court has held that "reputation alone, apart from some more tangible interests, such as employment," does not constitute a protected liberty or property interest under the due process clause. *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). The Second Circuit has interpreted *Paul* to require something more than mere stigma—so-called "stigma plus—" in order to lift defamation to the level of a constitutional deprivation. *Martz v. Inc. Village of Valley Stream*, 22 F.3d 26, 31–32 (2d Cir.1994); *Neu v. Corcoran*, 869 F.2d 662, 667 (2d Cir.1989). In attempting to determine what the "plus" is, the court has stated that:

> defamation .... is not a deprivation of a liberty interest unless it occurs in the course of dismissal or during termination or alteration of some other legal right or status.... [T]he "plus" is not only significant damage to a person's employment opportunities, but dismissal from a government job or deprivation of some other legal right or status.

*Neu*, 869 F.2d at 667; *Donato v. Plainview–Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 630 (2d Cir.1996) ("A free-standing defamatory statement made by a state official about an employee is not a constitutional deprivation. Instead, it is properly viewed as a state tort of defamation. But a defamatory statement about an employee implicates a liberty interest when it is made during the course of that employee's termination from employment"); *see also Martz*, 22 F.3d at 31–32; *Baden v. Koch*, 799 F.2d 825 (2d Cir.1986) (even when the alleged defamatory remark is made in con-

nection with a demotion, the comment still only weakly implicates the due process clause).

Plaintiff was neither terminated nor demoted, and he does not even attempt to show deprivation of some other right or status. Such rights or status can in some instances be created by state law. *See, e.g., Paul,* 424 U.S. at 708–09, 96 S.Ct. 1155. The Supreme Court has held that in order for a state statute to create a protected liberty interest, it must use "explicitly mandatory language" in connection with the establishment of "specified substantive predicates to limit discretion." *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 463, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989) (internal quotations omitted). Plaintiff's vague claim that he suffered "injury to his reputation" falls far short of complying with these requirements, and simply states a claim, at best, for common law defamation, a claim the Supreme Court has specifically held is not covered by § 1983. *Paul,* 424 U.S. at 710, 96 S.Ct. 1155; Proposed Amended Complaint ¶ 18.

Moreover, an equally plausible and separate basis to dismiss this claim stems from the fact that this letter was removed from plaintiff's file only one day after it was filed. Plaintiff argues that because the filing of this reprimand letter may have been publically known, whereas the fact that the letter was withdrawn may not have been, it still violated his liberty interest as guaranteed by the Fourteenth Amendment. However, the Second Circuit has held, in a case where a reprimand letter was filed and later revoked, the revocation "vitiates" the due process claim. *Brandt v. Bd. of Cooperative Servs.,* 845 F.2d 416, 417–18 (2d Cir.1988). The Court specifically rejected the argument made by plaintiff in the instant case, holding that the fact that individual's "could have gained access to [plaintiff's] file in the interim period before removal of the allegations is not of sufficient consequence by itself to implicate a liberty interest under

the fourteenth amendment." *Id.* at 418. Because we cannot envision any amendment of the complaint which would render this claim legally sufficient, we dismiss it with prejudice.

### C. *Property Interest*

■ Alternatively, plaintiff alleges that the denial of his request for a change of duty, apparently so that he could work a Monday shift instead of Saturday shift, deprived him of a property interest without due process in violation of the Fourteenth Amendment. Plaintiff theorizes that this action was taken in retaliation for his filing of a notice of claim against defendants. Proposed Amended Complaint ¶ 34. The complaint, and all papers submitted by plaintiff, are completely silent on how plaintiff has a property interest in which day of the week he works. There is no mention of how a different shift might lead to promotion, or an increase in income or responsibilities.

■ Traditionally, non-economic injury is an insufficient basis for a claim of property deprivation without due process under the Fourteenth Amendment; in fact, such a concept would seem inconsistent with the concept of "property." The Second Circuit has specifically found that denials of "a particular work assignment" concerns "interests that are not entitled to the protections afforded by the Due Process Clause." *Ezekwo v. New York City Health & Hosp. Corp.,* 940 F.2d 775, 783 (2d Cir.1991). Plaintiffs do not have property interests in the insubstantial aspects or discretionary benefits of their employment. *Boyd v. Schembri,* 1997 WL 466539, *3 (S.D.N.Y. Aug.13, 1997); *McNill v. New York City Dep't of Correction,* 950 F.Supp. 564, 572 (S.D.N.Y.1996). Accordingly, " 'disputes over overtime, over work assignments, over lunch and coffee breaks do not implicate the great objects of the Fourteenth Amendment.' " *Boyd,* 1997 WL 466539, *3 (quoting *Brown v. Brienen,* 722 F.2d 360, 365 (7th Cir.1983)). In fact, numerous courts have found that work assignment

decisions far more serious than those at issue here fail to implicate a protected property interest, such as being denied the right to serve as school superintendent,*Kinsey v. Salado Indep. Sch. Dist.,* 950 F.2d 988 (5th Cir.1992) (en banc), being suspended for five days without pay, *Larsen v. Lynch,* 1998 WL 229919 (D.Conn. Mar.31, 1998), being made to teach middle school instead of primary school, *Lewandowski v. Two Rivers Pub. Sch. Dist.,* 711 F.Supp. 1486, 1495–96 (E.D.Wis.1989), and even being terminated from employment completely as long as defendant continued to pay plaintiff her salary. *Cannon v. Beckville Indep. Sch. Dist.,* 709 F.2d 9, 11 (5th Cir.1983). Therefore, plaintiff's allegation in the proposed amended complaint, that he was denied a shift change while another officer's request for such a shift change was granted, is insufficient to state a claim. Proposed Amended Complaint ¶ 34. There is simply no property interest at stake in this case.

We grant leave to amend only where it appears that it would enable plaintiff to state a cause of action in future pleadings. The Supreme Court has held that "property interests .... [can be] created and their dimensions defined by existing rules or understandings...." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Thereafter, lower courts have ruled that a governmental employer may specifically create a property interest in a non-economic benefit, such as a particular work assignment at issue in this case. *Kinsey,* 950 F.2d at 997; *Jett v. Dallas Indep. Sch. Dist.,* 798 F.2d 748, 754 n. 3 (5th Cir.1986), *aff'd in relevant part and remanded in part,* 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). However, we note that since the creation of such a non-economic property interest is exceedingly rare; plaintiff's expectation of this right cannot be a mere "abstract need" or expectation. *Roth,* 408 U.S. at 577, 92 S.Ct. 2701. While an explicit statute or contract is not required to create the property right, and informal rules created by the state employer can create this right, *Perry v. Sindermann,* 408 U.S. 593, 601–03, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), these informal rules must be substantially as binding as a contract or statute. That is, the rule must make conferral of the benefit "virtually a matter of right," *Schwartz v. Thompson,* 497 F.2d 430, 433 (2d Cir.1974), so that the process is so nearly automatic as virtually to assure conferral of the benefit. *See Gagliardi v. Village of Pawling,* 18 F.3d 188, 192 (2d Cir.1994). We believe it highly unlikely that plaintiff can in good faith plead such automatic conferral of the right to a shift change, because if the Department automatically granted every such request by a sergeant, departmental discipline and morale would suffer and scheduling of duty tours would become a volatile, even chaotic, matter as sergeants competed for favored shifts. However, since Plaintiff's Memorandum of Law asserts that "changes in tours of duty are granted to sergeants *as a matter of right,*" Plaintiff's Memorandum of Law at 5 (emphasis added), we will permit plaintiff an opportunity to re-plead his deprivation of property claim if he can do so consistent with the strictures of Rule 11, Fed.R.Civ.P. If plaintiff does so, defendants may renew at that time their argument that the claim must be dismissed because adequate state remedies are available to plaintiff.

## IV. *Claim of Immunity as to the Town and the Police Department*

It is well established that in order to sustain a claim against a municipal defendant for relief under § 1983 against a municipal defendant, the plaintiff must show the existence of an officially adopted policy or custom that caused injury and a causal connection between that policy or custom and the deprivation of the constitutional right. *Monell v. New York City Dep't of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In his proposed amended complaint, plaintiff claims that the Town and the Police De-

partment had knowledge of Krebser's illegal and improper behavior and did nothing to prevent or remedy it. Proposed Amended Complaint ¶ 38. Such an allegation is sufficient to state a claim against the Town and the Police Department so that we cannot say that granting leave to re-plead would be futile. The Supreme Court has specifically held that such deliberate indifference can constitute an official "custom or practice" violating § 1983. *Monell,* 436 U.S. at 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Determining the reasonableness of the Town and the Department's conduct is impossible at this early stage; for now, it is sufficient to allege in the complaint that the Town and the Department knew about the incidents alleged by plaintiff and failed to take any preventative or remedial action. *See* Proposed Amended Complaint ¶ 38. Thus, for purposes of this motion, any claim of qualified immunity must fail; defendants may, of course, renew this claim at an appropriate time. *See, e.g., Salim v. Proulx,* 93 F.3d 86, 89 (2d Cir.1996).

## V. *Plaintiff's Claim of Conspiracy Under 42 U.S.C. § 1985*

Plaintiff fails to specify under which subsection of § 1985 his claims are based, but no cognizable claim is stated under any of the three subsections. Section 1985(1) by its terms is limited to conspiracies to impede the performance of duty by officers of the United States, and is obviously inapplicable. *See, e.g. Morast v. Lance,* 807 F.2d 926, 929 (11th Cir.1987). Section 1985(2) applies to obstructing justice through the intimidation of a party, witness, or juror, and is likewise clearly inapplicable. Section 1985(3), the Supreme Court has clearly held, requires that the defendants were motivated by racial or some other type of invidious, class-based discrimination. *United Bhd. of Carpenters & Joiners v. Scott,* 463 U.S. 825, 826, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983); *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). Plaintiff has made absolutely no claim that any defendant's conduct was motivated by class-based bias.

Moreover, even if there were some allegation of class-based conspiracy, plaintiff makes no effort to explain how any such conspiracy was formed, other then simply asserting that "the foregoing actions by defendants .... constitute a conspiracy." Proposed Amended Complaint ¶ 42. Such blanket allegations do not satisfy the basic requirements set forth by the Second Circuit in pleading conspiracy:

> "We have, of course, repeatedly held that in order to state a claim of conspiracy under § 1983 the complaint must contain more than mere conclusory allegations. And while a plaintiff should not plead mere evidence, he should make an effort to provide some details of time and place and the alleged effect of the conspiracy. Thus, complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed: diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct."

*Dwares v. City of New York,* 985 F.2d 94, 99–100 (2d Cir.1993) (internal citations and quotations omitted). Because granting leave to amend would clearly be futile, the entirety of plaintiff's § 1985 claim is dismissed with prejudice.

## CONCLUSION

Plaintiff's Rule 15(a) motion to amend the complaint is granted only insofar as it relates to those allegations of a violation under § 1983 of his First Amendment rights stemming from his removal as Terminal Agency Coordinator. Consequently, defendants' Rule 12(c) motion related to plaintiff's allegations of the deprivation of liberty without due process is granted, and this claim is dismissed with prejudice. Likewise, defendants' motion to dismiss plaintiff's claim for a deprivation of proper-

ty is dismissed, and plaintiff is granted leave to re-plead this claim if the can be done in conformity with Rule 11. Finally, defendants' motion to dismiss plaintiff's § 1985 claim is granted, and this claim is dismissed with prejudice.

SO ORDERED.