Maurice WILLIAMS, Plaintiff,

v.

The SALVATION ARMY, Defendant.

No. 98CIV.2056(RMB).

United States District Court,
S.D. New York.

July 31, 2000.

Kathreen A. Magarelli, Gary P. Field, Gary P. Field, Attorney at Law, Huntington, NY, for Plaintiff.

Cindy E. Molloy, Tratner & Molloy, NY, for Defendant.

## ORDER

BERMAN, District Judge.

On or about February 16, 1998. Plaintiff, Maurice Williams ("Williams" or "Plaintiff"), filed this action under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq., and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq. claiming that he was terminated from his employment as a child care worker at defendant The Salvation Army Brooklyn Group Home ("Home" or "Defendant" or "Salvation Army"), retaliated against, and treated unequally because of his race and disability. (See Complaint ("Compl.").) Defendant has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ.P.") arguing that, among other things, 1) Plaintiff was terminated for disciplinary reasons, and 2) Plaintiff's alleged injury does not qualify as a disability. For the following reasons Defendant's motion for summary judgment is granted and the complaint is dismissed.

## I. BACKGROUND

Plaintiff was employed by the Salvation Army from May 1993 until August 17, 1995. (Williams Affidavit "Aff." ¶ 2.) During that time, Plaintiff worked as a child care worker at The Salvation Army Brooklyn Group Home where residents, ages 12–21, were placed (often by court order) with the objective of developing their social skills.[1] (Hart Aff. ¶¶ 2–3.) A child care worker's job requirements include: "[h]igh [s]chool education and [c]ollege credits" and "[r]elated experience or applicable training." (Appendix to Def.'s Mot. for Summ. J. ("Appendix" or "App.") Exhibit ("Ex.") T.) Plaintiff's May 13, 1993 job application inaccurately reflected that he had attended Collins High School.[2] In addition, Plaintiff listed College of New Paltz, New Paltz, New York; Bachelor of Arts; Major: Early Childhood Education on his resume. (App.Ex. V.) **In fact, the record includes evidence that Plaintiff spent the years which he attributed on his job application and resume to his**

---

1. "The child care worker is the backbone to each program. It is essential that this person enjoy working with children. The child care worker is above all, a role-model for our youth and should conduct him or herself in a professional manner. It is expected that the child care worker interact, instruct and teach youngsters skills and values that will be useful tools in helping them become wholesome human beings." (Appendix to Def.'s Mot. for Summ. J. Exhibit T.)

2. Defendant has provided a letter from North Collins Central School stating, "there is no record of Maurice Williams attending or graduating from our school system," (App.Ex. X) and a letter from the area school district stating, "[a]ccording to our records Maurice Williams, d.o.b. 5/21/57, never attended or graduated from Gowanda Central School..." (App.Ex. Y.)

high school and college education incarcerated at Attica Prison and Collins Correctional Facility for an armed robbery offense. (App. Exs. W–Y; App. Ex. N at 17–30; Opp'n Mem. at 4.)

A May 19, 1995 evaluation report, prepared by Plaintiff's supervisor, Douglas Hart ("Hart") and signed by both the group home director and associate executive director, assessed Plaintiff's job performance in nineteen categories. (Williams Aff. Ex. B.) Williams received ten "satisfactory" and nine "needs improvement" evaluations (i.e., from categories of outstanding, good, satisfactory, and needs improvement). (*Id.*) During Plaintiff's employment at the Salvation Army, he received ten employee warning notices (App.Exs.1–10), and four suspensions (*Id.*)

On July 30, 1995, an incident occurred between Plaintiff and one of the residents at the Home, during which Plaintiff and the resident engaged in "a very loud argument" and two co-workers "came between" Plaintiff and the resident in order to physically separate them. (App.Ex. 9.) Immediately following the incident, Williams and his supervisor (Hart) completed a "Special Behavior Incident Report," after which Hart permitted Plaintiff to leave the premises. (Hart Aff. ¶ 6.) Hart stated to Williams that he would recommend that Plaintiff be terminated and would schedule a "termination meeting." (Hart Aff. ¶¶ 5–6; Williams Aff. ¶ 6.) On that same date, July 30, 1995, Hart completed a ninth employee warning notice (App.Ex. 9) and on that form checked off the box recommending "Dismissal."

Following the July 30, 1995 incident Plaintiff did not return to work until August 10, 1995. (Hart Aff. ¶¶ 8–9; App. Ex. G.) Upon his return, Plaintiff submitted a note from Dr. Michael Molaei, **a gynecologist and specialist in reproductive medicine** stating, in part, "pt underwent surgery at this office ... pt is advised to return to reg activity by Monday 8–8–95." (App.Ex. F.)

On August 12, 1995, a 3/8″ piece of ceiling plaster apparently hit Williams on the head while he was at work. (Williams Aff. ¶ 7; App. Ex. H.) According to Plaintiff's supervisor, Plaintiff asked that Emergency Medical Services be called. (Hart Aff. ¶ 12.) The Emergency Medical Service report described the object which presumably struck Plaintiff as "small" and indicates that Plaintiff was removed sitting up in a wheelchair, showing no signs of neurological or strength deficit. (*Id.*) As Plaintiff recollects, hospital medical personnel examined him and "They only gave me aspirins and sent me home." (App. Ex. N, at 15—16.) On Wednesday, August 16, 1995, Plaintiff visited Dr. Carolyn A. Martin. (Williams Aff. Ex. C.) Plaintiff reported "a little dizziness, nausea and a little ringing in his ears. He did not get sick on the train coming here. No other symptoms. **He doubts something is seriously wrong.** He is feeling a lot better." (*Id.*) (Emphasis added..) Dr. Martin stated: "No work till post Electroencephalogram on Friday.... Post the Electroencephalogram if normal he is cleared to return to work. If abnl. he will need a CT of the head." (*Id.*) Plaintiff has submitted no medical evidence as to any additional medical treatment.

On Friday, August 17, 1995, Plaintiff returned to work. (Hart Aff. ¶ 13.) At that time, Plaintiff, Plaintiff's supervisor (Hart), Hart's supervisor (Joseph Glover), and the senior child care worker (Alvin Dawson), convened a "termination proceeding." (Hart Aff. ¶ 17.) The parties discussed the July 30, 1995 altercation between Plaintiff and the Group Home resident, as well as other disciplinary issues. (*Id.*) All of the supervisory personnel present concurred in Hart's recommendation that Plaintiff be terminated. (Hart Aff. ¶ 17.) According to Hart, "the sole reason Williams was terminated was because of his disciplinary history and repeated failure to conduct himself properly with the children in the Home." (*Id.* at ¶ 18.) Plaintiff alleges that "the true reason for my termination was racial discrimination

and/or discrimination based on disability." [3] (Williams Aff. ¶ 9.)

On September 4, 1995, Plaintiff filed a New York State Worker's Compensation Board ("WCB") claim for disability compensation. (App.Ex. J.) On the complaint, Williams stated that the injury did not keep him from work; that he returned to work two days after his injury; that he was no longer under medical care; and that he was not presently in need of medical care. (*Id.*) On February 14, 1996, the WCB dismissed Plaintiff's claim. (*Id.*)

On or about September 4, 1995, Plaintiff also filed a (separate) Discharge or Discrimination Complaint with the New York State Worker's Compensation Board alleging that he was "being unduly harassed by [his] supervisors." (App.Ex. K.) Following hearings, the Compensation Board issued a Memorandum of Decision, dated September 17, 1996, concluding that claimant **"has no credibility" and "there were valid reasons to terminate the claimant from employment."** (App.Ex. K.)

On September 6, 1995, Plaintiff filed a complaint with the New York State Division of Human Rights ("DHR"), claiming that The Salvation Army terminated his employment because he is "an African American of dark skinned complexion." (App.Ex. O.) On May 22, 1997, following an investigation, the Division found "NO PROBABLE CAUSE to believe that the said respondent has engaged in or is engaging in the unlawful discriminatory practice complained of." (App.Ex. P.) (Emphasis included in original.) On August 20, 1996, Plaintiff filed another complaint with the DHR claiming that Defendant was retaliating against him by refusing to provide an employment reference. (App.Ex. Q.) On May 28, 1997, the DHR issued an opinion finding no proba-

ble cause for the complaint. (App.Ex. R.)

Plaintiff also filed a claim with the United States Equal Employment Opportunity Commission ("EEOC"), alleging a violation of Title VII by the Salvation Army. (App. Ex. S.) In a July 2, 1997 letter, the EEOC determined "that the evidence obtained during the investigation does not establish violations of the statutes." [4] (*Id.*) Plaintiff states that "[a]lthough the letter from the Equal Employment Opportunity Commission granting me the right to file a private action in Federal Court was dated June 2, 1997, I did not receive the letter until [picking it up personally from the New York District Office of the United States Equal Employment Opportunity Commission on] December 22, 1997." (Williams Aff. ¶ 10; App. Ex. A.) Plaintiff filed the instant Federal complaint, dated February 16, 1998, which was stamped as received by the Southern District Pro Se Office on February 23, 1998. (*Id.*)

## II. *SUMMARY JUDGMENT STANDARD*

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 61 (2d Cir.1998); *DeWitt v. Lieberman*, 48 F.Supp.2d 280, 287 (S.D.N.Y.1999). The moving party has the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,*

---

3. "Williams never told me that he had a disability from the 3/8″ piece of plaster ... nor did he express an intention to file a worker's compensation claim." (Hart Aff. ¶ 13.)

4. This correspondence also functioned as a Notice of Right to Sue, which serves as "no-

tice that if the Charging Party wishes to pursue this matter further, (s)he may do so by filing a private action in U.S. District Court against the Respondent(s). Once this 90 day period is over, the right to sue will be lost." (App.Ex. S.)

477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the court concludes that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial,'" and summary judgment must be granted. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 1348, 89 L.Ed.2d 538 (1986) (*quoting First Nat'l. Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968))

The court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded particular evidence." *Masson v. New Yorker Magazine,* 501 U.S. 496, 520, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991). If the moving party has met its burden, however, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. The nonmovant must set forth specific facts, not mere speculation or conclusory allegations, to demonstrate the existence of a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Allen v. Coughlin,* 64 F.3d 77, 80 (2d Cir.1995). In discrimination cases, "summary judgment under Rule 56 is still fully appropriate, indeed mandated, when the evidence is insufficient to support the non-moving party's case." *Distasio v. Perkin Elmer Corp.,* 157 F.3d at 61.

## III. *ANALYSIS*

### *Timeliness*

Defendant argues that Plaintiff's Title VII and ADA claims are time-barred be-cause they were not filed within 90 days of the EEOC's issuance of the Notice of Right to Sue (i.e. on or before 90 days after July 2, 1997), as is required under both Title VII and the ADA. (Def. Mem. at 14.) *See also* 42 U.S.C. § 12117(a) (incorporating 42 U.S.C. § 2000e–5(f)(1)). Plaintiff asserts that he did not receive the letter until December 22, 1997, when he personally picked up a Notice of Right to Sue letter (Compl.Attach) (*See also* Williams' Aff. ¶ 10), and that he filed his Complaint within 90 days of actual receipt; i.e., on February 16, 1998. (Compl.)

Title VII actions must be commenced within 90 days of receipt of a Notice of the Right to Sue from the EEOC. *See* 42 U.S.C. § 2000e–5(f)(1). *See also Brooks v. N.Y.C. Housing Authority,* 1999 WL 395387, at *1, 2 (S.D.N.Y. June 15, 1999). "It is presumed that a letter provided by a governmental agency has been mailed on the date shown on the letter and that an EEOC letter is received three days after its mailing." *Brooks,* 1999 WL 395387, at * 2. *See, e.g., Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 148, 104 S.Ct. 1723, n. 1, 80 L.Ed.2d 196 (1984); *Sherlock v. Montefiore Medical Center,* 84 F.3d 522, 525–26 (2d Cir.1996). *See also* Federal Rule of Civil Procedure 6(e).[5] Defendant claims Plaintiff's 90 day period for filing his federal claim commenced three days from the July 2, 1997 Right to Sue letter, and expired on November 5, 1997, three months before Plaintiff's actual filing.

■ The 90 day time period is not to be construed as a jurisdictional predicate, but rather is subject to equitable tolling. *Johnson v. Al Tech Specialties Steel Corp.,* 731 F.2d 143, 146 (2d Cir.1984).[6] Accord-

---

**5.** Federal Rule of Civil Procedure 6(e) provides that "Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon the party and the notice or paper is served upon the party by mail, 3 days shall be added to the proscribed period."

**6.** The "remedial purpose of the [civil rights] legislation as a whole would be defeated if aggrieved plaintiffs were absolutely barred from pursuing judicial remedies by reason of excusable failure to meet the time requirement." *Johnson,* 731 F.2d at 146 (*quoting Zipes v. Trans World Airlines, Inc.,* 455 U.S.

ingly, a court must consider the equities behind the delay and may extend the limitations period if warranted. *See id.* at 146; *see also South v. Saab Cars U.S.A., Inc.,* 28 F.3d 9, 11 (2d Cir.1994) (noting that equitable tolling may be allowed in certain circumstances, including where claimant has received inadequate notice). A plaintiff's failure to act diligently, however, is not a reason to invoke equitable tolling. *South,* 28 F.3d at 12.

Since the Court cannot determine precisely when, in fact, Plaintiff received the Right to Sue letter, it will give Plaintiff the benefit of the (considerable) doubt and deny Defendant's request to bar Plaintiff's claims. *See Skeete v. IVF America, Inc.,* 972 F.Supp. 206, 209 (S.D.N.Y.1997) (when facts regarding timeliness of a federal claim remain unclear, the defendant's motion to dismiss the federal claim as untimely is denied); *Shelton v. General Electric Aerospace Division,* 1998 WL 187413, at *1 (N.D.N.Y. April 14, 1998).

### Title VII Claim

■ Title VII makes it unlawful "for an employer ... to fail or refuse to hire or to discharge any individual ... because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). In *McDonnell Douglas Corp. v. Green* the Supreme Court established the criteria and burdens of proof in Title VII cases. 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). *See, e.g., Reeves v. Sanderson Plumbing Products, Inc.,* —— U.S. ——, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Fisher v. Vassar College,* 114 F.3d 1332, 1335 (2d Cir.1997) (en banc), *cert. denied,* 522 U.S. 1075, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998). The initial burden of proving a prima facie case of discrimination rests with the plaintiff. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981); *see also, e.g., Ansley v. Varsity Transit Inc.,* 1999 WL 672526, at *4 (S.D.N.Y. Aug.26, 1999). In

385, 398, 102 S.Ct. 1127, 71 L.Ed.2d 234

order to establish a prima facie case of discrimination, a plaintiff must show that (1) he is a member of a protected class; (2) he satisfactorily performed the duties of his position; (3) he was subject to an adverse employment action; and (4) the adverse employment action occurred in circumstances giving rise to an inference of discrimination on the basis of his membership in that class. *See, e.g., Burdine,* 450 U.S. at 254, 101 S.Ct. 1089; *Brennan v. Metropolitan Opera Ass'n. Inc.,* 192 F.3d 310, 316 (2d Cir.1999); *Stern v. Trustees of Columbia Univ.,* 131 F.3d 305, 311–12 (2d Cir.1997).

The Supreme Court recently observed that plaintiff's "burden is one of production, not persuasion; it can involve no credibility assessment." *Reeves,* —— U.S. ——, at ——, 120 S.Ct. 2097, 2105, 147 L.Ed.2d 105 (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)) (quotes omitted). If the plaintiff establishes a prima facie case, the burden shifts to the defendant, who then must articulate a legitimate, non-discriminatory reason for its employment decision. *See, e.g., Burdine,* 450 U.S. at 253–54, 101 S.Ct. at 1093–94; *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. If the defendant "articulates a non-discriminatory reason, the McDonnell Douglas burden-shifting framework drops out of the picture." *Adeniji v. Administration for Children Services, NYC,* 43 F.Supp.2d 407, 420 (S.D.N.Y. 1999) (citing *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093–94). That is, Plaintiff must then show that defendant's reason was pretextual, and that more likely than not discrimination was the true reason for the adverse employment consequence. *Fisher,* 114 F.3d at 1339. Plaintiff must present "a prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false" and plaintiff must provide enough evidence for the court to infer that the "employer is dissembling to cover up a discriminatory

(1982)) (internal quotes omitted).

purpose." *Id.* at 2108. Even so, " '[i]t is not enough ... to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination.' " *Reeves,* —— U.S. ——, at ——, 120 S.Ct. 2097, 2107 (*quoting St. Mary's Honor Ctr.,* 509 U.S. at 519, 113 S.Ct. 2742.

### Plaintiff's Prima Facie Showing

■ Plaintiff satisfies the first and third prongs of the *McDonnell* test in that he is African American and he was terminated from his employment. With respect to the second prong of the McDonnell test, *see McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *Thornley v. Penton Publishing,* 104 F.3d 26, 29 (2d Cir.1997), the record shows that Plaintiff, throughout his employment at The Salvation Army, had substantial difficulty meeting the job criteria. At the very beginning, Plaintiff submitted a false job application to The Salvation Army, claiming both a high school and college degree. (App. Exs. U—Y; App. Ex. N at 17—30; Opp'n Mem. at 4.) Although high school and college credits were required (App.Ex. T), during the years Plaintiff attributed to his high school and college education, he was, in fact, incarcerated at Attica Prison and Collins Correctional Facility for armed robbery. (App. Exs. U–Y; App. Ex. N at 17–30; Pl. 3(g) Stmt. ¶ 16.) Plaintiff made false representations to secure his job as a child care worker.

In addition, over the course of his employment as a child care worker at the Brooklyn Group Home of The Salvation Army, Plaintiff received eight Employee Warning Notices and four suspensions. There were incidents where Plaintiff was allegedly found sleeping on the job (Employee Warning Notice dated Nov. 11, 1993); when he neglected to report that a resident had been taken into police custody, an omission that resulted in the child remaining in police custody over night (Employee Warning Notice dated March 1, 1994); when he permitted residents to fight outside the residence (Employee

Warning Notice dated July 24, 1994); and where Plaintiff heatedly argued with a resident youth (Employee Warning Notice dated July 30, 1995). (*See* App. Exs. 1– 10.) Defendant asserts, compellingly, that these alleged incidents, warnings, and suspensions throughout Plaintiff's employment reflect Plaintiff's inability to satisfactorily perform the job of child care worker. (Def. Mem. at 4.)

Plaintiff, on the other hand, professes— unpersuasively—that his poor disciplinary record does not "rise to the level that requires termination" and that the "incidents merely represent minor citations that any typical child care worker might accumulate over two years of employment with troubled children." (Opp'n Mem. at 5.) Among other things, Plaintiff points to a May 19, 1995 job Evaluation Report as "evidence" of his employer's satisfaction. (Opp'n Mem. at 3.) **Yet in almost half of the evaluation categories in that Report, Plaintiff was found to "need improvement." (*Id.*)**

"[T]he Second Circuit has required the plaintiff, as part of a prima facie case, to show that he or she 'shows satisfactory job performance at the time of discharge.' " *Hawkins v. Astor Home for Children,* 1998 WL 142134, *1, 4 (S.D.N.Y. March 25, 1998)(*quoting Thornley,* 104 F.3d at 29). *See also Evans v. Golub Corp.,* 29 F.Supp.2d 194, 205 (S.D.N.Y.1998) (plaintiff's Title VII claims fail, in part, because "those allegations are undermined to a great extent by the largely undisputed evidence that plaintiff's work was poor and that he took breaks without informing his supervisor, left before the end of his shift, failed to complete work when he had enough time to do so ..."). Plaintiff's employment tenure consistently reflected Plaintiff's lack of qualification for employment as a child care worker, a deficiency unanswered by Plaintiff's promotion and job evaluations. *Payne v. State of N.Y. Power Auth.,* 997 F.Supp. 492 (S.D.N.Y. 1998) (due to evidentiary insufficiency, summary judgment granted in Title VII

action despite record including plaintiff's positive work evaluations and past promotion). Plaintiff offers no evidence other than his own conclusory allegations from which a reasonable factfinder could conclude otherwise. *Ferguson v. Barram,* 2000 WL 375243, at *1, *7 (S.D.N.Y. April 11, 2000) (summary judgment in Title VII claim is granted, despite plaintiff's contentions that he is qualified for the job, where "plaintiff has come forward with no evidence, beyond his conclusory opinions . . .).

With respect to the fourth *McDonnell* prong, Plaintiff contends—but provides no independent support—that many of his co-workers were similarly criticized, yet not terminated. (Williams Aff. ¶ 5.) Plaintiff's contentions are insufficient to provide an inference of discrimination.[7] *Shabat v. Blue Cross Blue Shield of Rochester Area,* 925 F.Supp. 977, 988 (W.D.N.Y.1996) (employee's disagreement with adverse employment action did not create material dispute of fact as to whether action was the result of discrimination; employee must proffer some evidence of discrimination beyond his own subjective beliefs), *aff'd. sub nom. Shabat v. Billoti,* 108 F.3d 1370 (2d Cir.1997); *Obradovich v. New York City Bd. of Ed.,* 1993 WL 97307, at *4 (S.D.N.Y. March 31, 1993) ("plaintiff has come forward with no evidence, beyond his conclusory opinions . . . [T]he issue . . . is not plaintiff's views of his own qualifica-

tions, but whether defendant's stated reasons were pretextual"). On the other hand, Plaintiff's past promotion can be evidence that Defendant bore no discriminatory intent. *Grady v. Affiliated Central, Inc.,* 130 F.3d 553, 560 (2d Cir.1997) (on summary judgment motion, fact that the person who made the decision to fire plaintiff was the same person who made the decision to hire her was a factor "strongly suggest[ing] that invidious discrimination was unlikely"); *Payne,* 997 F.Supp. at 499 ("It should be noted that the individuals whom plaintiff accuses of demoting her for discriminatory reasons are the same individuals who had promoted her less than two years earlier."). The record also shows that Plaintiff was terminated after a long history of warnings and suspensions (App.Exs.1—10), and that Plaintiff's claims of racial discrimination were previously rejected by every venue before which Plaintiff appeared (i.e., New York State Worker's Compensation Board, New York State Division of Human Rights, United States Equal Employment Opportunity Commission). (App. Exs. K, M, P, R, and S.) (*See* App. K.)("After reviewing the entire file and the record, it is found that the claimant who appeared before me has no credibility. The claimant has submitted false information to the employer in terms of obtaining his position. Moreover, there has been sufficient testimony by the employer's witnesses to support a finding that

---

7. Plaintiff also contends "My attorneys and I have not had an opportunity to complete any pretrial discovery proceedings, and this action should not be summarily dismissed without my having an opportunity to fully present all of the witnesses who would testify at trial, including present and past employees of Defendant." (Williams Aff. ¶ 12.) Plaintiff's contention lacks merit. Plaintiff had adequate opportunity to seek discovery after filing his complaint. He appeared before this Court at four pretrial conferences, from May 1999 to October 1999. Plaintiff never made a discovery application to the Court. "It is well established that, pursuant to Fed.R.Civ.P. 56(f), a 'party resisting summary judgment on the ground that it needs discovery in order to defeat the motion must submit an affidavit showing (1) what facts are sought [to resist

the motion] and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts.' Plaintiff['s] failure to file such an affidavit here is fatal to their claim." *Haran v. Dow Jones & Co., Inc.,* 2000 WL 777982, at *1, *3 (2d Cir. June 15, 2000) (*quoting Gurary v. Winehouse,* 190 F.3d 37, 43 (2d Cir.1999). *See also Demery v. Extebank Deferred Compensation,* 216 F.3d 283, 2000 WL 772039, at *1, *2 (2d Cir. June 15, 2000); *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.,* 769 F.2d 919, 926 (2d Cir. 1985). "Mere references to the lack of discovery are insufficient to satisfy the test articulated most recently in *Gurary." Haran,* 2000 WL 777982, at *3.

there were valid reasons to terminate the claimant from employment i.e. the claimant did not properly engage as a counselor with those under his supervision.")

Plaintiff's inability to satisfy the second and fourth prongs of the *McDonnell* test is fatal to his prima facie case. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Austin v. Ford Models, Inc.*, 149 F.3d 148, 152 (2d Cir.1998).

### Pretext

■ Assuming, arguendo, that Plaintiff were able to establish a prima facie case, his Title VII claim would, nevertheless, fail because he cannot show that the non-discriminatory reason(s) articulated by Defendant for the termination, i.e., that he failed to perform his job adequately, was pretextual. *Norton v. Sam's Club*, 145 F.3d 114, 119 (2d Cir.1998)("[Plaintiff's] very weak prima facie case, combined with an at best highly dubious showing of pretext, that in itself does not implicate discrimination, is simply not enough...."). Plaintiff fails to rebut the evidence offered by Defendant, including extensive documentation of numerous disciplinary actions taken against Plaintiff. (App.Exs.1–10.) Plaintiff's argument that these transgressions "merely represents minor citations that any typical child care worker might accumulate over two years of employment with troubled children" is, as noted, not persuasive. (Opp'n Mem. at 5.) Plaintiff's employer proffered substantial legitimate non-discriminatory reasons for terminating Plaintiff's employment. *Siano v. Haber*, 40 F.Supp.2d 516, 523 (S.D.N.Y.1999) (employer's evidence established that employee's termination was not pretextual when her employer made a business decision to terminate plaintiff's employment).

Where, as here, legitimate non-discriminatory reasons exist, "[i]t is not the function of this Court to second-guess an employer's business decision." *Cardoza v. Healthfirst, Inc.*, 1999 WL 78246, at *1, *6

(S.D.N.Y. September 30, 1999) (*quoting Meng v. Ipanema Shoe Corp.*, 73 F.Supp.2d 392, 398 (S.D.N.Y.1999)) (employer "was entitled to retain other employees who, in its view, were more qualified or better suited to the company's goals than plaintiff"). *See also Dister v. Continental Group, Inc.*, 859 F.2d 1108 (2d Cir.1988). As the Second Circuit noted in *Norton*, "a jury [or judge] cannot infer discrimination from thin air. And thin air is all the plaintiff has produced in the case before us." 145 F.3d at 119.

### Americans With Disabilities Claim

■ A plaintiff alleging employment discrimination under the ADA bears the initial burden of establishing a prima facie case. *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 869 (2d Cir.1998); *Wernick v. Federal Reserve Bank of N.Y.*, 91 F.3d 379, 383 (2d Cir.1996). A plaintiff must show that: (1) his employer is subject to the ADA;[8] (2) he suffers from a disability within the meaning of the ADA; (3) he could perform the essential functions of his job with or without reasonable accommodation; and (4) he was fired because of his disability. *See Reeves v. Johnson Controls World Services, Inc.*, 140 F.3d 144, 149–50 (2d Cir.1998); *see also Ryan*, 135 F.3d at 869–870; *Bates v. Long Island R.R. Co.*, 997 F.2d 1028, 1035 (2d Cir.1993). The ADA defines "disability" as: (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such impairment. 42 U.S.C. § 12102(2). *See also Bragdon v. Abbott*, 524 U.S. 624, 630, 118 S.Ct. 2196, 2201, 141 L.Ed.2d 540. "A plaintiff who showed that he had an impairment and that the impairment affected a major life activity would nonetheless be ineligible if the limitation of the major life activity was not substantial." *Colwell v. Suffolk County Police Dep't*,

---

8. Neither party disputes that The Salvation Army is subject to the ADA. (Opp'n Mem. at 6; Def. Mem. At 7.)

158 F.3d 635, 641 (2d Cir.1998), *cert. denied*, 526 U.S. 1018, 119 S.Ct. 1253, 143 L.Ed.2d 350 (1999).[9]

### Plaintiff's Prima Facie Showing

■ Plaintiff does not present a prima facie case of disability discrimination. While both parties agree that The Salvation Army is an employer subject to the ADA,[10] Plaintiff is unable to establish **any of the additional (three) prongs** necessary to present a prima facie case. First, Plaintiff presents no evidence that he suffers from a disability within the meaning of the ADA[11]. Plaintiff's disability claim is based upon injuries allegedly suffered when a small piece of plaster fell from the ceiling at Plaintiff's place of employment, striking Plaintiff on the head. (Opp'n Mem. at 6.) Yet, the record is replete with evidence that Plaintiff's injuries, if any, were temporary and *de minimis;* i.e., they do not constitute an impairment much less a disability. *See* 29 C.F.R. § 1630.2(j)(2).[12] *See also Colwell,* 158 F.3d at 646 (2d Cir. 1998) (seven month impairment of ability to work, even with some residual limitations, constituted too short a duration to be substantially limiting where single acute episode not expected to recur in the foreseeable future); *Boyce v. New York City Mission Society,* 963 F.Supp. 290, 296–297 (S.D.N.Y.1997) (noting that "ADA

---

**9.** Defendant asserts that judicial estoppel should preclude Plaintiff from arguing that he is disabled under the ADA, pointing out that Plaintiff, on his worker's compensation disability claim, "stated that his injury did not prevent him from working" and, therefore, "Plaintiff cannot and will not be able to ... explain why he now claims to be disabled." (Def. Mem. at 13.) "[T]hose courts that do apply judicial estoppel do so only with caution." *Mohamed v. Marriott Int'l., Inc.,* 944 F.Supp. 277, 280 (S.D.N.Y.1996). "[U]ncritical application of judicial estoppel fails to recognize significant differences in: (1) the applicable legal standards of the ADA and the Social Security Act; (2) the types of fora and procedures involved in ADA cases and SSDI administrative determinations; and (3) the policy goals animating the two statutes' definitions of disability." 944 F.Supp. at 282–283. *See also Parker v. Columbia Pictures Industries,* 204 F.3d 326 (2d Cir.2000)(employee's statements in applications for disability benefits that he was completely incapacitated would not preclude finding, in an ADA action, that employee was capable of working when reasonably accommodated; such statements did not subject employee to judicial estoppel). "[I]t would be inappropriate to invoke the fact-sensitive and limited doctrine of judicial estoppel to erect a per se bar to ADA protection for individuals ..." *Mohamed,* 944 F.Supp. at 282.

Defendant also asserts that the principles of res judicata bar Plaintiff's claim that he is disabled (Def. Mem. at 12), i.e., that Plaintiff's disability action before the New York State Worker's Compensation Board precludes an ADA action in Federal court. (Def. Mem. at 12, 13.) ("At the first Worker's Compensation Board proceeding ... the board found that plaintiff was not eligible for paid leave

... [p]laintiff should therefore not be allowed to now argue that he was disabled.") While Defendant's position has some (at least) surface appeal, the prior worker's compensation determination does not entirely resolve the issue of disability discrimination raised here. *Monahan v. New York City Dep't of Corrections,* 214 F.3d 275, 2000 WL 730286, at *1, *10 (2d Cir. June 8, 2000)("Whether or not the first judgment will have preclusive effect depends in part on ... whether the same evidence is needed to support both claims"). *See also, Flaherty v. Lang,* 199 F.3d 607, 616 (2d Cir.1999)(*citing McNellis v. First Fed'l. Sav. & Loan Ass'n. of Rochester,* 364 F.2d 251, 257 (2d Cir.1966)).

**10.** *See supra* note 8.

**11.** Under the ADA, "disability" is defined as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A). EEOC regulations define a "substantially limited" individual as: "(i) unable to perform a major life activity that the average person in the general population can perform; or (ii) significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1)(1999).

**12.** EEOC regulations regarding substantial limitation include consideration of "the permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment".

interpretive guidelines further clarify the physical conditions intended to be within the scope of the Act by stating 'temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities' "). At the time of the alleged injury, Emergency Services reported no significant injury, but rather, described Plaintiff as suffering "no neurological deficit or strength deficit." (App.Ex. H.) In its report, Emergency Services described the (3/8″) piece of plaster that struck Plaintiff as "small." (*Id.*) The hospital personnel who examined Plaintiff "only gave me an aspirin and sent me home." (App. Ex. N, at 15—16.)

Plaintiff now alleges that he suffered "blunt head trauma" which in turn led to a disability for which he was terminated. (Opp'n Mem. at 7.) ("Plaintiff was struck in the head restricting his ability to perform virtually any job during the period of impairment.") But Plaintiff himself acknowledged that any injury he received did not interfere with work and was temporary.[13] Two days after the incident, on Wednesday, August 16, 1995, Plaintiff visited Dr. Carolyn A. Martin, who evaluated his condition. (Williams Aff. Ex. C.) Plaintiff reported "a little dizziness, nausea and a little ringing in his ears. He did not get sick on the train coming here. No other symptoms. He doubts something is seriously wrong. He is feeling a lot better." (*Id.*) A temporary injury, such as that which Plaintiff claims, does not give rise to a disability within the meaning of the ADA. *Colwell v. Suffolk County,* 158 F.3d 635 (2d Cir.1998); *Graaf v. North Shore Univ. Hosp.,* 1 F.Supp.2d 318, 320–321 (S.D.N.Y.1998) (A back injury that forced plaintiff to leave work temporarily, and from which plaintiff does not claim permanent injury, does not trigger protection under the ADA); *Davis v. Bowes,* 1997 WL 655935, *15 (S.D.N.Y.1997) ("designating a transient or temporary illness as a handicap is inconsistent with congressional intent").

Second, Plaintiff does not show that he could perform the essential functions of his job with or without reasonable accommodation. Plaintiff bears the burden of "production and persuasion" with respect to whether he is qualified. *Borkowski v. Valley Central School District,* 63 F.3d 131, 137 (2d Cir.1995). As shown in the preceding (Title VII) analysis, Plaintiff was not qualified for his employment; i.e., he did not possess a high school degree and college credits, and he did not interact appropriately with the children in his care. He does not successfully carry that burden of production and persuasion with respect to whether he is qualified. *Friedman v. Consolidated Edison Co. of N.Y.,* 1999 WL 511962, at *1, *10 (S.D.N.Y. July 20, 1999) (plaintiff must be a *qualified individual* with a disability, and be able to perform the essential functions of his job with reasonable accommodation). *See also Evans,* 29 F.Supp.2d at 205.

■ Third, Plaintiff has not shown that he was terminated because of his alleged disability. As Plaintiff's supervisor, Hart, stated in an affidavit, "Williams never told me that he had a disability from the 3/8″ piece of plaster which he claims hit him in the head nor did he express an intention to file a worker's compensation claim." (Hart Aff. ¶ 13.) Furthermore, as evidenced by the July 30, 1995 Employee Warning Notice—upon which Plaintiff's supervisor clearly indicated "dismissal" un-

---

13. On September 4, 1995, Plaintiff responded on a New York State Worker's Compensation Board questionnaire as follows:

Q: Date you stopped work because of injury?
A: 8—12–95.
Q: Have you returned to work?
A: Yes.
Q: If yes, on what date?
A: 8—14—95.
Q: Does injury keep you from work
A: No.
Q: Did you receive or are you now receiving medical care?
A: No.
Q: Are you now in need of medical care?
A: No.
(App.Ex. J.)

der the "action to be taken" with respect to Plaintiff's employment—Plaintiff's supervisor decided to terminate Plaintiff *before* the 3/8″ piece of plaster allegedly hit Plaintiff in the head, and for reasons having nothing to do with Plaintiff's alleged injury and everything to do with Plaintiff's job performance. (App.Ex. 9.) *Lanci v. Arthur Andersen, LLP,* 2000 WL 329226, at *1, 6 (S.D.N.Y. March 29, 2000) (Courts should not "ignore [ ] the larger sequence of events and also the larger truth.... [T]he employee who is already on notice of performance problems should not be permitted to seek shelter in a belated claim of disability. The ADA was not meant to prevent employers from taking steps to address poor performance by non-disabled employees.")(*citing Soileau v. Guilford of Maine, Inc.,* 105 F.3d 12, 16–17 17 n. 4 (1st Cir.1997))(internal quotes omitted).

Plaintiff also asserts, alternatively, that he falls under the protective ambit of the ADA because The Salvation Army "regarded him" as disabled. (Opp'n. Mem. at 8.) "An individual need not actually have a physical impairment to state a claim under the ADA ..., as long as that individual is 'regarded as having such an impairment.'" *Francis v. City of Meriden,* 129 F.3d 281, 284 (2d Cir.1997)(*citing* 42 U.S.C. § 12102(2)(C)).[14] "This turns on the employer's perception of the employee, a question of intent ..." *Francis,* 129 F.3d at 284. Plaintiff bears the burden of presenting (some) evidence that Defendant perceived him to be "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs." 29 C.F.R. § 1630.2(j)(3)(i); *Ryan v. Grae & Rybicki,* 135 F.3d at 872. Plaintiff fails to meet this burden. The record shows that Defendant planned to terminate Plaintiff's employment before Plaintiff suffered the alleged injury. (App.Ex. 9.) In addition, Plaintiff's supervisor states that he was never told of Plaintiff's alleged disability. (Hart Aff. ¶ 13.) Plaintiff provides no contrary evidence whatsoever (Opp'n. Mem. at 8) to demonstrate that The Salvation Army perceived him as being substantially limited in his ability to work. *Ryan,* 135 F.3d at 872.

### Pretext

"If the plaintiff meets his burden, the burden of production then shifts to the defendant who must proffer a legitimate, non-discriminatory reason for its actions ... If the employer furnishes such a reason, ... [t]he ultimate burden then rests on the plaintiff to persuade the factfinder that the employer's proffered explanation is merely pretext for its intentional discrimination." *Greenway,* 143 F.3d at 51 (*citing McDonnell Douglas,* 411 U.S. at 802–804, 93 S.Ct. 1817). In the instant case, Plaintiff fails to carry this burden. Defendant has proffered substantial evidence to support its stated reason for terminating Plaintiff's employment; i.e., that Plaintiff was unable satisfactorily to perform the job. *See Thornley v. Penton Publishing, Inc.,* 104 F.3d 26, 28 (2d Cir.1997)(noting that employer had adduced substantial evidence, including letters and memos critical of plaintiff, to support its claim that it was unhappy with plaintiff's performance).

Plaintiff has failed to rebut this evidence, which includes ten warning notices and four suspensions. As discussed above, the argument that Plaintiff was qualified for the job of child care worker and performed that job adequately, is belied by the record. *Taylor v. Polygram Records,* 1999 WL 124456, *1, *9 (S.D.N.Y. March 8, 1999)("The evidence amassed by Defendants amply supports their proffered ... reason for discharging Plaintiff: her failure to perform her job to its satisfaction. The submission of evaluations and memoranda critical of [Plaintiff's] performance constitutes permissible support for the Defendants' proffered explanation.") "The

---

**14.** An individual "has none of the impairments defined in [the definition of the term impairment] but is treated by a covered entity as having a substantially limiting impairment." 29 C.F.R. § 1630.2(1).

mere fact that an employee disagrees with h[is] employer's assessments of h[is] work . . . cannot standing on its own show that h[is] employer's asserted reason for termination was pretextual." *Ricks v. Conde Nast Publications, Inc.*, 92 F.Supp.2d 338, 346 (S.D.N.Y.2000). *See also Taylor*, 1999 WL 124456, at *10 (plaintiff's attempt to rebut employer's explanation "by parsing the details of selected incidents, generally disputing her supervisors' assessments, and providing her own contrary appraisal of her work, is unavailing" in showing firing was pretextual).

## IV. *ORDER*

For the reasons set forth above, the Defendant's motion for summary judgment is granted. The Clerk of Court is respectfully directed to enter judgment dismissing the complaint.